THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD PARSONS, Defendant-Appellant.

First District (6th Division)   No. 1—90—1038

Opinion filed December 6, 1991.

Altheimer & Gray, of Chicago (Mark T. Hechinger and Phillip J. Zisook, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Veronica X. Calderon, and Ketki M. Shroff, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE RAKOWSKI delivered the opinion of the court:

Defendant-appellant Ronald Parsons was charged by information with possession of more than 15 grams of a controlled substance, namely cocaine, with intent to deliver. A jury found defendant guilty of the charge, and defendant was sentenced to a term of imprisonment of 12 years, three years' mandatory supervised release and a fine of $40,000. Defendant appeals this judgment requesting that his conviction be reversed outright, remanded for a new trial or remanded for an evidentiary hearing.

Chicago police officers Frank Goff, Victor Guerrieri and Gerry Hutch testified at trial. They related that on August 4, 1987, they were at the home of Ronald Nemerow, along with Detective Abreu. The reason for their presence was to execute a search warrant for marijuana. During execution of the warrant, Nemerow asked how he could become an informant. Nemerow was told that he would have to give the officers two arrests to prove himself reliable, and the amount he would be paid would depend on the amount of drugs eventually seized. Nemerow asked the officers, "How about if I could get you four ounces?" Officer Goff told Nemerow that this would be a good start.

Nemerow proceeded to make a phone call. Goff testified that Nemerow said "Hi, its me. Yeah. You got that information we talked about. Yeah. Where? What time? Okay." Nemerow then hung up the phone and told the officers to go to the Edens Plaza shopping center, and that there defendant would have four ounces of cocaine. Both Nemerow and

his van were searched. In the van, the officers found a number of electric ceiling Casablanca fans and track lighting fixtures. The officers and Nemerow then proceeded to the shopping plaza.

Once there, Nemerow parked his van near the entrance to a store. One of the police officers stayed in the van while Officers Goff and Abreu stationed themselves in the entranceway to the store. Defendant drove his car, a white Volvo station wagon, into the parking lot, circled the area and parked across from the van. Defendant's car was about 100 feet from the van and faced in the opposite direction. Goff and Abreu, who were in undercover garb, were about 100 feet from defendant's vehicle.

Nemerow then exited his van and walked toward defendant's car. At this time, Goff and Abreu began to approach the vehicle as well. Goff testified that when he got to a point of about 15 feet from the vehicle, he saw defendant peer over his shoulder and peel the horn section of his car off. Defendant then removed a clear plastic bag containing white powder from the steering column. According to Goff, when defendant saw the officers, he tried to put the bag back into the steering column. The officers were on the driver's side of defendant's vehicle.

All of the officers testified that Nemerow never entered defendant's car. The distance from the car Nemerow got, however, varied from the officers' accounts, from being alongside the car to 15 feet away. The officers testified that as defendant saw them, he tried to drive away, but that his car was blocked by another officer in a police vehicle. Goff testified that Abreu entered defendant's car and recovered a bag of cocaine from the horn section. Goff testified at trial that he took a second bag from the horn section, although at a hearing on a motion to suppress Goff had testified that he wasn't sure whether it was Abreu or Goff himself who recovered the second bag. Officer Guerrieri testified that Goff removed both bags, while Officer Hutch testified that he saw Goff remove one bag. It was stipulated that 218.53 grams of cocaine were recovered from defendant's car.

Defendant testified in his own behalf. He stated he did not even know what four ounces of cocaine looked like. He was 49 years old at the time of trial and had no prior convictions. He was in the real estate business and had a net worth of over $2 million, primarily through real estate investments in condominiums and shopping centers.

Defendant knew Nemerow through a lease agreement regarding a condominium unit located in Vernon Hills, Illinois. The named lessee was Nemerow's girl friend, although Nemerow paid the rent. Defendant collected his own rents and saw Nemerow once a month for this purpose.

Also, Nemerow sold various goods after buying out store inventories. Defendant had purchased carpeting and sweatshirts from Nemerow.

In July of 1987, defendant was remodeling his basement and arranged to purchase track lighting and four Casablanca ceiling fans from Nemerow. On August 4, 1987, Nemerow called defendant. Defendant asked if Nemerow had the lights and fans, and Nemerow, according to defendant, said "Yeah." They decided to meet at the Edens Plaza and not at the condominium because Nemerow said he wanted to remain near his address.

Defendant further testified that he drove his car in the parking lot and parked it next to Nemerow's van. Nemerow then debarked from the van and entered defendant's car. Within seconds, two men approached the car. Defendant said that Nemerow put a plastic bag on the floor, and then said "Get the hell out of here." Defendant drove a few car lengths but was cut off by a car. Defendant then got out of his car, and the police pulled Nemerow from the passenger seat. Defendant said that both he and Nemerow were then searched. According to defendant, Officer Abreu went in the car, held up the bag Nemerow had dropped and said "We got the cane." Goff never entered the car. Defendant denied ever removing the horn assembly and placing any cocaine in his car.

During the hearing on post-trial motions, defendant was allowed to make a statement on his own behalf. During this statement, which included arguments in mitigation and numerous other matters, defendant made the following comments:

> "Sam [defense counsel] is overworked. I think Sam when he gets out on the floor here, you can't get any better. But if you take a juggler and give him four balls and then five balls, and then eight balls and then ten balls, sooner or later there is going to be mistakes made *** Sam's got a system that he's got like tunnel vision. He only works at one case at a time. For two and a half years I'm on the outside and Sam doesn't talk to you and its frustrating.

* * *

> Over the two and a half years, twice I set up a deposition meeting with Ron Nemerow to come down to Sam's office. One time it took about two months to set up this meeting because Sam is too busy. *** And its hard to set up appointments with Sam, you know, you've been here; how many times have I shown up for court and Sam is in Springfield. Sam is some place else.

* * *

> But twice I set up depositions so we could get Nemerow down there [at defense counsel's office] *** I talked him into coming

down to Sam's office. The first time I sat in Sam's office with Ron Nemerow for three and a half hours; Sam never showed up. The second time I'm walking in through the vestibule and Sam says 'I can't do it right now; call me tomorrow.' Well there goes the deposition right down the toilet.

On Monday morning when our trial started, Sam looks over at me and he says 'Who is Helen Velante[,]' one of the witnesses *** he doesn't know who my witnesses are ***. And it wasn't Helen Velante, it was her son *** we don't have a witness[.]

\* \* \*

Sam didn't even know until after the thing was done that I had a land contract selling my condominium to Ron Nemerow.

\* \* \*

Sam didn't even know my business. He introduced me as a real estate agent. I never have been a real estate agent."

When defendant observed during the statement that his counsel was not present when the jury returned with its verdict, defendant observed, however: "There is nothing wrong with Sam. He's a good, good attorney ***." During defendant's statement, he referred to a "three-page confession or summary" that Nemerow had given him. This document described, according to defendant "how the day went," and defendant further related that Nemerow had apologized to him. Also at the hearing, defendant's wife stated: "Ron Nemerow has called me a couple of times, and the last point was the date that the jury came in with a guilty verdict. He called from Joliet stating that he was very sorry for the drugs that he dropped in Ron's car ***. He's called me twice on that." The three-page document defendant referred to, the record reveals, was in defense counsel's possession prior to trial. While it was shown to the State, it was never introduced into evidence and is not part of the record on appeal.

The first issue we address is whether the trial court erred in failing to hold a hearing or conduct further inquiry based on defendant's statements at the hearing on post-trial motions.

Defendant contends that based on the facts of this case, "the trial judge was under a duty to make inquiry of defense counsel concerning the post-trial allegations" raised by defendant and his wife. According to defendant, "a real issue of neglect by defense counsel was raised." A number of factual contentions of defendant are not borne out by the record. It is clear that defendant claimed the defense of entrapment, not in his answer to discovery filed on the day of trial, but had raised the defense in his previous answer to discovery. Also, defense counsel never actually said during opening statement, as defendant contends, that the

jury would hear Ron Nemerow's testimony, although defense counsel did comment upon Nemerow, indicating, for example, that Nemerow was arrested for drug offenses after the incident forming the basis of the instant charge.

With regard to the three-page statement of Nemerow—this document was never introduced into evidence and is not part of the record on appeal. While defendant has not argued the document's admissibility or that failure to move to introduce the document was neglect, it would appear to tie in heavily to the issue of defense counsel's alleged neglect in failing to interview or call Nemerow as a witness. The record does reveal that defense counsel showed this document to the State, and in conference with the trial judge, assured the court that if the State did not call Nemerow, defendant would call Nemerow.

While defendant did not formally present a *pro se* petition alleging ineffective assistance, but rather made his statements during the sentencing phase of the post-trial motion hearing, the State does not contend that this is a reason why we should not apply the law pertaining to such a motion, nor do we perceive that it should be. Other matters upon which defendant appears to base his neglect case are the naming in answer to discovery of the wrong witness, Helen Velante, when the witness who should have been named previous to trial was Helen Velante's son. Defendant's brief leaves us bereft of any reason why the failure to name or call this witness prejudiced defendant in any way. The witness appears from the record to simply have been at the informant's house when it was searched by the police. Also, defendant contends that his trial counsel should have revealed the existence of the lease between defendant and Nemerow's girl friend earlier than defense counsel did. It was turned over to the State during the course of the trial, and the trial judge ruled it inadmissible.

In support of his position that defense counsel neglected this case, defendant cites two cases. In *People v. Krankel* (1984), 102 Ill. 2d 181, 464 N.E.2d 1045, the defendant made a formal *pro se* motion alleging ineffective assistance of counsel and stated that he had informed his counsel prior to trial of the existence of an alibi witness and an affirmative defense, but that trial counsel had failed to contact the witness or raise the affirmative defense. The Illinois Supreme Court held that defendant should have had other counsel than his trial counsel to represent defendant on the ineffective assistance claim, and remanded the matter for a new hearing. In *People v. Jackson* (1985), 131 Ill. App. 3d 128, 474 N.E.2d 466, the defendant wrote to the trial judge, informing the judge that defendant's attorney was ineffective in representing defendant. At the hearings on post-trial motions, defendant verbalized

his complaint, which went to his counsel's failure to call a witness to testify, who had in fact been interviewed by trial counsel. Trial counsel then stated why the witness had not been called (matters relating to the inability of the witness to place defendant at the witness' place of business at the time of the crime, and the cumulative nature of other testimony of the witness). The trial court denied defendant's motion, and the appellate court affirmed, stating:

"In our opinion, the problems created by a defendant who, during post-trial proceedings, claims that his attorney has ineffectively represented him during trial, are best met by the objective tests ***. The trial court should examine the factual matters underlying the defendant's claim. There are several matters to be determined. If the claim goes to matters of trial tactics or strategy, the defendant's claim should be found spurious and his request for new counsel denied. *** If, however, the factual matters show possible neglect of the defendant's case, the court should appoint new counsel who can undertake an independent evaluation of the defendant's claim and present the matter to the court from a detached, yet adversarial, position. This was the case in *Krankel*, where defendant alleged that his attorney failed to interview an alibi witness.

It seems elementary that during the evaluation of defendant's claims, some interchange between the court and the defendant's attorney must take place. Such an interchange is necessary to avoid potential abuses by those who would falsely claim situations of the *Krankel* type. *** [C]ounsel may simply answer questions and explain the facts and circumstances surrounding matters which are alleged by his client to demonstrate that he was not adequately represented at trial." 131 Ill. App. 3d at 139.

Most recently, the Illinois Supreme Court has spoken on this issue in the case of *People v. Nitz* (1991), 143 Ill. 2d 82, 572 N.E.2d 895. There, defendant made a *pro se* motion for a new trial, alleging that his trial counsel was incompetent for failing to call witnesses defendant claimed would have provided evidence of his defense. In *Nitz*, the trial court listened to defendant's arguments as well as defense counsel's explanations for not calling the witnesses to testify. Then, the court ordered an evidentiary hearing regarding the failure to call some of the witnesses, and the trial court allowed defendant's counsel to examine the witnesses whose testimony could prove trial counsel ineffective. The court held that allowing trial counsel to do so was error, yet held the error to be harmless. Prior to announcing its holding, however, the court observed:

"In interpreting *Krankel,* our appellate court has concluded that there is no *per se* rule that new counsel must be appointed every time a defendant presents a *pro se* motion for a new trial alleging ineffective assistance of counsel. [Citations.] Rather, to determine whether new counsel should be appointed, 'the trial court should examine the factual matters underlying the defendant's claim[.] *** [I]f the claim lacks merit or pertains to matters of trial strategy, then no new counsel need be appointed[, but] if the allegations show possible neglect of the case *** new counsel [should] be appointed.' [Citation.]

We agree with the appellate court's interpretation of *Krankel.* If the trial court conducts a preliminary investigation of the defendant's allegations and determines them to be spurious or pertaining only to trial tactics, no new counsel need be appointed to represent the defendant. If, however, the defendant's allegations of incompetence indicate that trial counsel neglected the defendant's case, the court should appoint new counsel to argue defendant's claims of ineffective assistance of counsel." 143 Ill. 2d at 134-35.

■ It seems apparent from *Nitz* and is spelled out in *Jackson* (which the *Nitz* court cited approvingly) that there should be some interchange between the trial court and the defendant's trial counsel to explain complained-of possible neglect. Here, it seems clear that there was possible neglect. When one considers defendant's statement that his counsel failed to interview the informant, defendant's wife's comment that the informant told her he dropped the cocaine in defendant's car, and the existence of a written statement from the informant, whose precise contents are unknown to this court, but which may have been helpful to defendant, a serious question emerges as to whether Nemerow's testimony would have helped defendant. The record does not make clear that the decision not to call Nemerow as a witness was trial strategy— the facts imply the possibility that Nemerow was never even interviewed by defendant's counsel. The failure to call the witness (whose mother was erroneously disclosed) and the failure to reveal the existence of a lease seem to be quite harmless, given the apparent irrelevance of the witness' testimony and the cumulative nature of the lease.

It is not clear that the same could be said of favorable testimony on the part of Nemerow, whom defendant's counsel repeatedly stated in the record would be a witness at trial. The trial court did not follow up on defendant's complaints and ask for an explanation from trial counsel, as the cases indicate should occur. While the record reveals that defense counsel secured Nemerow's presence at trial, it does not establish that

Nemerow was actually interviewed. Absent any explanation from trial counsel as to why Nemerow was not called and the lack of a showing that Nemerow was actually interviewed, we hold that the case is to be remanded for clarification of this issue.

In holding as we do, we emphasize that we are not remanding for a full evidentiary hearing and appointment of counsel on the issue of trial counsel's incompetence. Rather, we remand only for the purpose of the interchange mandated by *Jackson* and *Nitz*. If, for example, defendant's trial counsel indicates to the court that Nemerow was in fact interviewed and that counsel determined Nemerow's testimony would not be helpful to defendant, then the matter would clearly be one of trial strategy, and defendant's informal *pro se* motion would properly be denied. We reject the implication of the State at oral argument that the trial court was in a position to reject defendant's factual contentions made at the hearing based upon conduct of counsel at the trial when such conduct does not resolve or contradict defendant's factual contentions.

The next issue we address is whether defendant was proven guilty beyond a reasonable doubt. Essentially, defendant points to certain inconsistencies in the officers' testimony relating to how far the informant was from defendant's car at the time of the incident, which officers actually grabbed the bags of cocaine, and whether one officer was in the informant's van or not. Defendant also would have us infer that both the informant's and Officer Abreu's testimony would have been unfavorable to the State.

First of all, the inconsistencies as to positioning of the officers during the incident and who took the bags from the car are not major enough to create serious doubts about the officers' testimony. The officers were clear in testifying that the informant did not reach the car and that defendant himself peeled away the horn compartment and grabbed the bag. While defendant testified differently, this was an issue of fact for the trier of fact. It is for the jury to decide what witnesses to believe and what weight to give their testimony. *People v. Collins* (1985), 106 Ill. 2d 237, 261-62, 478 N.E.2d 267.

Defendant relies heavily on our recent case of *People v. Johnson* (1989), 191 Ill. App. 3d 940, 548 N.E.2d 433, where the court did draw an adverse inference to the State due to the State's unexplained failure to call the informant. In *Johnson*, however, the facts revealed an unjustifiable refusal on the part of the State to tender the informant to the defense for interview, and the police testimony was inherently suspect. Here, it is apparent that Nemerow was available to defense counsel for both interview and testimony at trial. Moreover, as

the State points out, cases have held that the uncalled witness must have testimony "unique to the case in order to give rise to this negative inference." (*People v. Ayala* (1990), 208 Ill. App. 3d 586, 597, 567 N.E.2d 450.) Here, the officers and the defendant both presented their testimony as to whether the informant reached defendant's car and planted the cocaine.

The next issue we address, related to the last, is whether the trial court erred in refusing defendant's proffered jury instruction regarding the State's failure to call the informant and a police officer at trial.

■■ Given the availability of the witnesses to the defense as well as the State (defendant has not argued the unavailability of either witness to him) and the fact that the testimony was not unique, defendant was not entitled to the instruction. The record reveals that Officer Abreu was on medical leave at the time of trial, so there is an explanation for his absence, and defense counsel in fact had secured Nemerow's presence, so that Nemerow was in the lockup during the trial. We therefore hold that the trial court did not abuse its discretion in failing to provide the non-Illinois Pattern Jury Instruction in this case, as this case is not a case where the negative inference should arise. See *Ayala*, 208 Ill. App. 3d 586, 567 N.E.2d 450.

■ Finally, defendant argues that the trial court erred in refusing to allow defendant to admit the copy of the lease between defendant and the tenant of the apartment. The lease defendant sought to have introduced was turned over to the State only during the trial. Discovery had long since been completed and there was no error in the court's disallowing its introduction. Moreover, defendant himself testified to the lease that Nemerow paid on, so the lease itself was only cumulative as evidence. Any error occurring thus was harmless.

Accordingly, the judgment of the circuit court is affirmed in part, reversed in part and remanded with directions.

Affirmed in part; reversed in part and remanded with directions.

McNAMARA and LaPORTA, JJ., concur.