THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SCOTT BALTIMORE, Defendant-Appellant.

Third District    No. 3—95—0129

Opinion filed August 1, 1997.—Rehearing denied October 8, 1997.

Thomas A. Karalis (argued), of State Appellate Defender's Office, of Ottawa, for appellant.

Marshall E. Douglas, State's Attorney, of Rock Island (John X. Breslin

and Judith Z. Kelly (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOLDRIDGE delivered the opinion of the court:

Following a bench trial on stipulated evidence, the defendant, Scott Baltimore, was found guilty of two counts of first degree murder in the death of Howard Floyd. Defendant was sentenced, only on the first count, to a term of imprisonment of 55 years.

On appeal, the defendant argues that: (1) the trial court erred when it denied his pretrial motion to suppress his inculpatory statement made to police three days after he executed a written waiver of his *Miranda* rights; and (2) the trial court erred in summarily disposing of defendant's posttrial claim of ineffective assistance of counsel without conducting a preliminary investigation to determine whether to appoint new counsel to argue the posttrial motion.

We affirm the trial court's ruling on the motion to suppress. We remand the matter with instruction to the trial court to conduct an appropriate inquiry into defendant's claim of ineffective assistance of counsel.

## FACTS

At the hearing on the defendant's motion to suppress, Sgt. Ronald Tacey, of the Rock Island police department, testified that he interviewed the defendant on June 15, 1993, at the sheriff's department in Scott County, Iowa, where defendant was in custody for driving under the influence and other traffic charges. At the time defendant was taken into custody, he was driving Floyd's car.

Sgt. Tacey testified that he interviewed the defendant in the presence of Rock Island police officer Roy Melton. The officers told defendant they wanted to talk to him about a death investigation and that Floyd had been found dead. Prior to questioning, the defendant was given a copy of the Rock Island police department waiver of rights form and was asked to read along while Sgt. Tacey read each right aloud. Sgt. Tacey then asked the defendant if he understood each right, and he responded in the affirmative. The defendant was asked if he wished to waive his rights and answer questions, which he also answered in the affirmative. The defendant then signed the waiver form and spoke to the officers.

The defendant told the officers that he and his girlfriend, Cynthia Doss, had been at Floyd's house, that he and Floyd had been drinking, and that he asked Floyd if he could borrow Floyd's car to take Doss home. The defendant stated that Floyd was in the kitchen, alive, when he and Doss left. The defendant then gave a taped statement to the officers and agreed that he would read over and sign a

written transcription when it was available. The officers left to continue their investigation.

Three days later, on June 18, 1993, Sgt. Tacey returned to the Scott County facility, this time with Rock Island police officer Michael Noon. The defendant was given the transcript of his previous statement to review. He reviewed each page, making written corrections and initialing them. The transcribed statement contained a reference to the defendant's signing the waiver of rights form. After defendant finished reviewing the transcript, which took 30 to 45 minutes, Sgt. Tacey asked the defendant if he understood his rights and remembered what his rights were, and the defendant answered in the affirmative. Sgt. Tacey did not reread the *Miranda* rights and did not ask the defendant to sign another waiver.

Sgt. Tacey then told defendant that they had interviewed his girlfriend and she told them that the defendant had taken some money from Floyd. This caused the defendant to tell Sgt. Tacey and Officer Noon that he had cut an electrical cord from a vacuum cleaner and used it to tie up Floyd and that he took money from Floyd's wallet. He also said that he did not intend to kill Floyd. At that point, Officer Noon asked the defendant if they could tape record that statement. The defendant responded by saying that he wished to speak to an attorney first, at which point the officers immediately terminated the interview.

Officers Melton and Noon also testified at the suppression hearing and completely corroborated Tacey's testimony. Defendant did not testify at the suppression hearing.

After arguments of counsel, the trial court determined that the *Miranda* warning given at the initial interview carried over to the subsequent interview and did not have to be repeated. The trial court then denied the motion to suppress.

A bench trial was held at which all evidence was entered by stipulation. The trial court found defendant guilty of both counts of first degree murder and continued the matter for sentencing.

When the matter was called for sentencing, the assistant public defender advised the court that defendant wanted to discharge counsel and intended to argue ineffectiveness of trial counsel as grounds for a new trial. The court informed defendant that counsel had performed competently and dismissed the motion to withdraw.

The matter proceeded to sentencing and defendant was sentenced to 55 years' imprisonment. The defendant's posttrial motion, submitted and argued by trial counsel, did not raise ineffective assistance of counsel.

# ANALYSIS

On appeal, the defendant first contends that the trial court erred in denying his motion to suppress the inculpatory statements made in the second interview, three days after he executed the written wavier. The defendant maintains that the original warning was stale and thereby ineffective as to the second interview. After a careful review of the record, we disagree.

■ As a preliminary matter, we must first address the appropriate standard of review. Ordinarily, a ruling on a motion to suppress will not be disturbed unless it is manifestly erroneous. *People v. Frazier*, 248 Ill. App. 3d 6 (1993). However, where the facts and the credibility of the witnesses are not in dispute, the issue is subject to *de novo* review. *Frazier*, 248 Ill. App. 3d 6; *People v. Woods*, 241 Ill. App. 3d 285 (1993). Inasmuch as neither the facts nor the credibility of the witnesses in this case was in dispute, we will apply the *de novo* standard.

■ Our supreme court has recently stated that "fresh *Miranda* warnings are not required after the passage of several hours." *People v. Garcia*, 165 Ill. 2d 409, 425 (1995). From this statement in *Garcia*, the defendant finds an implicit holding that fresh *Miranda* warnings are required after the passage of more than a day. We disagree.

A new set of *Miranda* warnings is required "only in those situations where a substantial probability exists that warnings given at a previous interrogation are so stale and remote that a substantial possibility exists that the suspect was unaware of his or her constitutional rights at the time subsequent interrogation occurs." *Garcia*, 165 Ill. 2d at 426. Moreover, the *Garcia* court instructs us that "the totality of the circumstances should be looked to in determining whether given defendants understand their constitutional rights in post-*Miranda* warning interrogations." *Garcia*, 165 Ill. 2d at 426.

In the matter *sub judice*, the totality of the circumstances establishes that the defendant understood his constitutional rights at the time he made the inculpatory statements. The defendant carefully read the transcript of the prior interview, spending approximately 45 minutes to read and initial each page. The record shows that the transcript included the recitation of the *Miranda* warnings by Sgt. Tacey and the defendant's acknowledgment that he understood and waived those rights. Although Sgt. Tacey did not reread the *Miranda* rights to the defendant, he did ask him if he remembered and understood his rights. The defendant answered in the affirmative. In addition, the defendant displayed an understanding of his right to silence and to speak with an attorney when he exercised those rights in terminating the interrogation after being asked if he would again give a taped statement.

Other circumstances contribute to our determination that the defendant understood his rights carried over from the previous interview. The place of interrogation was the same for both interviews. Sgt. Tacey was the lead interrogator in both interviews. The subject matter of both interviews was the same, *i.e.*, the death of Floyd and the possession of Floyd's car by the defendant. Additionally, the defendant had prior experience with the criminal justice system, further evidencing his knowledge of the right to remain silent and to an attorney. See *Garcia*, 165 Ill. 2d at 426.

Thus, the totality of the circumstances establishes that the *Miranda* warnings given to defendant on June 15 were not so stale and remote on June 18 that the defendant was unaware of his rights. The trial court's decision to deny the motion to suppress is upheld, even under our review *de novo*.

The defendant next maintains that the trial court should not have summarily dismissed his posttrial claim of ineffective assistance of counsel. We agree.

■ There is no *per se* rule that new counsel must be appointed every time a defendant presents a *pro se* motion alleging ineffective assistance of counsel. *People v. Nitz*, 143 Ill. 2d 82 (1991). Instead, as our supreme court recently pronounced in *Nitz*, the trial court *must* conduct a preliminary investigation of the factual matters underlying a defendant's claim, and:

> "If the trial court *** determines [the defendant's claim] to be spurious or pertaining only to trial tactics, no new counsel should be appointed to represent the defendant. If, however, the defendant's allegations of incompetence indicate that trial counsel neglected the defendant's case, the court should appoint new counsel to argue defendant's claims of ineffective assistance of counsel [at the posttrial stage]." *Nitz*, 143 Ill. 2d at 134-35.

Accord *People v. Parsons*, 222 Ill. App. 3d 823, 830-31 (1991). In *Parsons*, the court held that "[i]t seems apparent from *Nitz* *** that there should be some interchange between the trial court and the defendant's trial counsel to explain the complained-of possible neglect." *Parsons*, 222 Ill. App. 3d at 830.

■ The record in this matter indicates that the trial judge summarily dismissed the defendant's claim of ineffective representation without a preliminary investigation into the claim so as to examine the factual matters underlying the claim. Our review of the record leads us to conclude that the trial court denied the motion without any knowledge of the factual allegations underlying the claim of ineffective assistance. It is clear that *Nitz* and its progeny require some kind of investigation by the trial court into the underlying

factual basis, if any, of the allegations of ineffectiveness before the defendant's claim can be dismissed. Here no such investigation occurred.

Accordingly, we find that the trial court erred in failing to conduct the necessary preliminary examination as to the factual basis of defendant's allegations against his attorney, and we remand so that the trial court can conduct this preliminary investigation. If the court determines that the claim of ineffectiveness is spurious or pertaining only to trial tactics, it can then dismiss the motion.

For the foregoing reasons, the judgment of the circuit court of Rock Island County is affirmed in part, reversed in part and remanded for proceedings not inconsistent with the views expressed in this opinion.

Affirmed in part; reversed in part and remanded.

SLATER and HOMER, JJ., concur.