THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. COREY MOORE, Defendant-Appellant.

First District (1st Division)   No. 1—07—0173

Opinion filed April 6, 2009.—Rehearing denied May 1, 2009.

Michael J. Pelletier, Charles M. Schiedel, and Charles W. Hoffman, all of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (James E. Fitzgerald, Alan J. Spellberg, and Jon J. Walters, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GARCIA delivered the opinion of the court:

The defendant appeals the trial court's rulings regarding his claims of ineffective assistance of trial counsel, following an evidentiary hearing pursuant to *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984), on remand from the Illinois Supreme Court. The Illinois Supreme Court remanded with directions that the court "conduct the necessary preliminary examination as to the factual basis of defendant's allegations against his appointed trial counsel." *People v. Moore*, 207 Ill. 2d 68, 81, 797 N.E.2d 631 (2003). The court made clear: " '[w]e *** are not remanding for a full evidentiary hearing and appointment of counsel on the issue of trial counsel's incompetence.' " *Moore*, 207 Ill. 2d at 81, quoting *People v. Parsons*, 222 Ill. App. 3d 823, 831, 584 N.E.2d 442 (1991). Following the preliminary inquiry, the trial court appointed new counsel on defendant's behalf and conducted an evidentiary hearing.

On appeal, the defendant contends the trial court improperly limited the scope of counsel's appointment to the single issue the trial court found to have possible merit; the court barred appointed counsel from investigating the defendant's other claims of ineffective assistance. Specifically, the defendant claims the trial court erred by

refusing to allow appointed counsel to investigate his claim that trial counsel failed to competently challenge the circumstances of photographic and lineup identifications of the defendant by a key witness. We find no merit to any of the defendant's claims and affirm.

## BACKGROUND

The record contains evidence pertaining to two separate cases, both bench trials. The defendant was represented in each case by the same attorney, assistant public defender (APD) John Carey. Following his convictions, a single posttrial hearing was held on both cases. Treating the two cases as one, the defendant presented a single *pro se* motion requesting posttrial appointment of counsel other than the public defender, arguing his trial counsel, APD Carey, rendered ineffective assistance. The trial court denied defense counsel's posttrial motion without addressing the defendant's *pro se* claims. The defendant was sentenced to natural life in one case and to death in the other.

In the natural life case, case No. 97—CR—1779, the defendant was convicted of first degree murder and armed robbery for the September 3, 1996, fatal shooting of Lonnie Williams and attempted first degree murder of Melanie Williams, his former employers. On direct appeal, we remanded for a *Krankel* hearing following the supreme court's lead in the defendant's death penalty case. *People v. Moore*, No. 1—99—2640 (2003) (unpublished order under Supreme Court Rule 23). Upon return to this court following remand proceedings below, we affirmed the defendant's conviction, rejecting very similar claims to the claims now before us. *People v. Moore*, No. 1—04—0766 (2005) (unpublished order under Supreme Court Rule 23). We held the circuit court had conducted a sufficient preliminary inquiry into the defendant's *pro se* allegations of ineffectiveness of trial counsel, finding that the allegations were without merit, and denied his request for yet another remand to appoint "new counsel to further pursue his claims." *People v. Moore*, No. 1—04—0766, slip op. at 15 (2005) (unpublished order under Supreme Court Rule 23).

In the case before us now, No. 97—CR—1780, the defendant was convicted of first degree murder and aggravated unlawful restraint for the November 21, 1996, fatal shooting of his girlfriend, Kimberly Fort. He was sentenced to death for Fort's murder (subsequently commuted by the Governor to natural life in prison without the possibility of parole). Because he received the death penalty for Fort's murder, the case proceeded directly to the Illinois Supreme Court. The supreme court found the trial court erred by failing to make a preliminary inquiry into the factual bases of the defendant's *pro se* posttrial mo-

tion alleging ineffective assistance of his trial counsel. *Moore*, 207 Ill. 2d at 79-81. The supreme court remanded the case for this limited purpose, noting that the trial court could deny the defendant's *pro se* motion if it determined that his claim of ineffective assistance of counsel was "spurious or pertain[ed] only to trial strategy." *Moore*, 207 Ill. 2d at 81.

We set out below in detail the preliminary inquiry conducted by the trial court at the *Krankel* hearing. At the hearing, the defendant presented allegations of deficiencies by counsel pertaining to both trials. We consider his allegations only as they pertain to the case before us. The trial court began with his request that the defendant elaborate on his allegations of ineffective assistance, with as much specificity as possible.

The defendant claimed trial counsel informed him he would not receive the death penalty from the trial judge if he waived his right to a jury for both his trial and sentencing. The defendant stated that if counsel had not told him this, he would not have waived his right to a jury trial. The defendant contended counsel would not allow him to testify at the suppression hearing or at trial. The defendant also alleged counsel failed to have any meaningful communication with him, failed to discuss trial strategy with him, failed to give him copies of all his documents, and failed to follow the defendant's directions. The defendant contended that in essence no attorney-client relationship existed between he and APD Carey as APD Carey was unwilling to do any investigative work on the defendant's behalf.

Regarding trial counsel's alleged deficiencies affecting his trial, the defendant complained APD Carey failed to investigate or interview a number of alibi witnesses, including Shirley Rivera and her daughter Lashawana,[1] who would place him in Atlanta, Georgia, at the time of Fort's murder. The defendant contends APD Carey also failed to obtain phone records of Fort and the Executive Inn, where he claimed he stayed in Atlanta, which would have corroborated his alibi.

The defendant also alleged that APD Carey failed to present evidence regarding the circumstances of the lineup identification by witness Synetta Smothers. The defendant argued that contrary to her trial testimony, Ms. Smothers did not identify him as the offender during the lineup. The defendant claimed the one-way mirror in the lineup room was "old and worn" and that the participants could see through it. The defendant claimed that Ms. Smothers actually identified another lineup participant, Michael Cage, as the offender. According to the defendant, during the lineup, he stood in the "number one" posi-

---

[1]The spelling of this name varies throughout the record.

tion and Mr. Cage stood in the "number five" position. The defendant alleged that when Ms. Smothers pointed to Mr. Cage, Mr. Cage said to the defendant, "She pointed at me." After the lineup, the defendant was informed by the police that Ms. Smothers had identified him as the offender. The defendant claimed he informed APD Carey of Ms. Smothers's misidentification prior to the trial, but APD Carey failed to investigate the issue. The defendant argued counsel's only concern was avoiding the death penalty and not proving the defendant's innocence.

Lastly, the defendant argued APD Carey was ineffective for calling the wrong "beat officer" to testify at the hearing on his motion to suppress Ms. Smothers's photographic and lineup identifications. According to the defendant, Officer Staudohar, rather than Officer Hanley who was called and testified, was the first officer to respond to the scene of the crime and Officer Staudohar wrote a report in which he asserted that Ms. Smothers told him she had witnessed the offense, but did not know the offender. The defendant argued that had his counsel presented the correct officer at the hearing, that officer's testimony would have discredited the testimony of Detective Andrew Abbott. Detective Abbott testified that when he interviewed Ms. Smothers at the scene, she named "Corey" as the offender and stated she had seen him on a "frequent basis" in the presence of Fort. Detective Abbott further testified that on the day of the murder, Ms. Smothers identified the defendant as the offender from a photograph depicting the defendant with Fort.

Former APD Phillip Coffey, who assisted APD Carey during both of the defendant's trials, appeared at the hearing because APD Carey passed away prior to remand. Mr. Coffey joined the defense team when the case was a year old. Mr. Coffey stated he prepared many of the pretrial motions and worked closely with APD Carey during the trial. Mr. Coffey stated he met with the defendant at the jail and spoke with him in court on numerous status dates. Mr. Coffey recalled discussing the case with the defendant at length at least three or four times. Mr. Coffey acknowledged that most of the contact with the defendant was by APD Carey.

Regarding the defendant's contention that APD Carey failed to investigate or interview his potential alibi witnesses in Atlanta, Mr. Coffey stated that he never personally contacted those witnesses. He recalled APD Carey stating the defendant's alibi defense "was not going anywhere," which led him to assume APD Carey contacted those witnesses, but he was not sure whether that actually occurred.

Concerning the defendant's claim that APD Carey failed to adequately prepare for the motion to suppress the identifications

made by Ms. Smothers, based both on the photograph she was shown on the day of the offense and after viewing a lineup, Mr. Coffey told the court he recalled the hearings. Mr. Coffey stated there was "some confusion at one point about an officer that didn't author the report, and there was going to be the possibility of calling another officer." Mr. Coffey recalled discussing the matter with APD Carey and that "Mr. Carey strategically chose not to call that other witness." Mr. Coffey could not recall the reasoning for that decision, but recalled the issue was discussed.

Following the trial court's interchange with Mr. Coffey, the trial court informed the defendant he could question Mr. Coffey; the defendant declined. The case was taken under advisement.

On December 13, 2003, the trial court issued its ruling. Regarding the allegations of ineffective assistance relevant generally to both cases, the court found the defendant failed to make a sufficient showing that appointment of new counsel was required. The court's ruling included the defendant's allegations regarding his waiver of his right to a jury and his right to testify.[2] With regard to the instant case, the court found that Mr. Coffey was unable to say for certain whether APD Carey had investigated the alibi witnesses in Atlanta, Georgia. The court stated:

> "I believe, to be on the safe side I am going to appoint an attorney as to 97 CR 1780. So that they have an opportunity to see what was provided forth as to the alibi. I know that means they can basically look into all of Mr. Carey's actions in that case. But that is the only allegation set forth that I believe has some merit. I know the attorney who is appointed may look into other matters, but we'll see."

The court appointed private counsel, Richard Kling, to represent the defendant.

On February 10, 2004, Mr. Kling appeared before the court for the first time and sought direction as to the scope of his appointment. Before the judge could respond, the prosecutor interjected that Mr. Kling had been appointed "for the specific issue as to whether or not the public defender Jack Carey adequately investigated the defendant's alibi defense." The trial court replied, "That's basically what it is."

After a number of continuances to address procedural matters, Mr. Kling advised the court that in addition to the issue of APD Carey's failure to adequately investigate the defendant's alibi defense, the

---

[2]As noted, we rejected the defendant's claims of error pertaining to his life sentence case. *People v. Moore*, No. 1—04—0766 (2005) (unpublished order under Supreme Court Rule 23).

defendant had provided Mr. Kling with documents concerning complaints he filed and, therefore, Mr. Kling was "following up leads on those as well." The prosecutor responded that "our only issue here, Judge, is whether or not Counsel was ineffective as far as alibi witnesses." The prosecutor continued, arguing that anything else was not relevant because the court found those issues to be without merit. The prosecutor asked the court to "keep the scope narrow as far as discovery and the hearing." Mr. Kling replied, "Judge, I think the easy answer is I will file whatever I am going to file. If you are not going to consider it, you will strike it." The trial court continued the case, stating, "we will find out what [Mr. Kling] is filing and if there are any objections and see what actually is being filed." Thereafter, the State filed a document entitled, "People's Response to Defendant's Improper Request to Expand the Scope of the *Krankel-Nitz* Hearing Beyond the Mandate and the Law."

On May 9, 2006, the State reminded the court of its filing seeking to restrict counsel from investigating issues other than the defendant's claims of ineffective assistance relating to his alibi defense. Mr. Kling responded that he understood that at the evidentiary hearing he was limited to addressing whether APD Carey was ineffective in pursuing the defendant's alibi defense.

On October 18, 2006, the evidentiary hearing began. In his opening statement, Mr. Kling noted that the court had reviewed all of the defendant's *pro se* allegations of ineffective assistance of counsel and determined that only the issue of APD Carey's failure to investigate the defendant's potential alibi defense had potential merit. Mr. Kling stated that based on the court's earlier ruling, he was limiting his counsel to that issue.

Mr. Kling presented the testimony of Anita Garcia, a mitigation specialist with the Cook County public defender's office who had been assigned to the defendant's case. Ms. Garcia testified that while she was working on the defendant's case, he complained to her that APD Carey was not following through on his alibi defense. Ms. Garcia recalled the defendant telling her that he "wasn't happy with what Jack Carey was and wasn't doing." Ms. Garcia testified that the defendant specifically complained that APD Carey was not investigating people "down south."

The defendant also testified. He claimed that he informed APD Carey that he had been in Atlanta, Georgia, at the time of Fort's murder with his father, Michael Jackson, and his father's girlfriend, Shirley Rivera, and her daughter, Lashawana. At that time, Mr. Jackson was living in the Executive Inn Hotel in Atlanta. The defendant testified he informed APD Carey there were video cameras

in the hotel and that during his three months in Atlanta, he spoke with other guests and employees of the hotel. The defendant claimed he asked APD Carey to contact his father, Ms. Rivera, her daughter, and a woman named Cynthia, whom he dated while in Atlanta, to corroborate his alibi.

The defendant claimed that about a month after he gave APD Carey this information, APD Carey told him he was in the process of trying to contact those individuals. The defendant stated that each time APD Carey visited him in the jail, he informed the defendant that he was still "looking into it." The defendant testified that as time passed, he began to believe that APD Carey was not really investigating his alibi defense. The defendant wrote APD Carey's supervisor, attorney Sheldon Green, advising Mr. Green that he was dissatisfied with APD Carey's representation. The defendant later spoke with Mr. Green by telephone and informed him of his concerns. On April 2, 1997, before his case went to trial, the defendant complained on the record to the court about his dissatisfaction with APD Carey's representation. On January 30, 1998, the defendant asked the court to appoint counsel other than the public defender to represent him because he was unhappy with APD Carey's representation, including his failure to investigate the defendant's alibi defense. APD Carey told the defendant that his alibi defense was "not going anywhere," but the defendant did not believe that APD Carey had actually interviewed any of the potential witnesses from Atlanta.

The defendant acknowledged that his father testified at his trial as an alibi witness, but he complained that APD Carey did not interview him until a week before the trial began and only after the prosecution interviewed him. At his trial, the defendant's father testified he could not place the defendant in Atlanta on the day of Fort's murder.

The defendant testified that following his convictions he filed a written motion seeking appointment of counsel other than the public defender. As support for his motion, the defendant wrote, "[c]ounsel failed to go and talk to defense witnesses when he was made aware of their whereabouts." The defendant testified that according to his knowledge, APD Carey never investigated his alibi defense by interviewing the potential witnesses or looking at the hotel video tapes.

On cross-examination, the defendant testified he lived with his father in Atlanta for three weeks before moving into an Atlanta shelter in early October. The defendant admitted that his father was incarcerated in Racine County at the time of his trial, where he was interviewed by APD Carey.

The videotaped interviews of Ms. Rivera and her daughter, made by the prosecution, were moved into evidence by Mr. Kling to support the defendant's contention that APD Carey never interviewed them concerning the defendant's alibi defense.

At the conclusion of the evidentiary hearing, the court found the defendant failed to establish a violation of his right to effective assistance of counsel. The court did find that the trial notes of APD Carey failed to confirm that any Atlanta investigation was conducted regarding the defendant's alibi claims and that a review of the videotaped statements of Ms. Rivera and her daughter confirmed that they were never contacted by APD Carey. However, the court noted that APD Carey called the defendant's father as a witness and his father failed to provide an alibi for the day of Fort's murder. The court also noted that the Riveras' testimony would not have aided the defendant at trial because, based on the videotaped interviews, neither could place the defendant in Atlanta on the day of the murder. Having considered the evidence presented at the evidentiary hearing, the court found APD Carey made a reasonable investigation into the defendant's alibi defense, even without having contacted Ms. Rivera and her daughter. The trial court denied the defendant's motion for a new trial and affirmed his convictions and sentences. This appeal followed.

## ANALYSIS

The defendant contends the trial court violated his constitutional right to counsel by directing appointed posttrial counsel to limit his investigation to the single claim of ineffective assistance related to his alibi defense, thus barring posttrial counsel from investigating the remaining claims the defendant raised in his *pro se* posttrial motion. In his main brief, the defendant argues that because the sixth amendment "guarantees a defendant facing incarceration 'the right to counsel at all critical stages of his criminal process' [citations]" and "[i]t is well established that the preparation and presentation of posttrial motions in a criminal case are considered 'critical stages' of the process [citation]," the court's limitation on posttrial counsel's representation deprived the defendant of his constitutional right to counsel. He contends the trial court's ruling presents a question of law we review *de novo*, citing *People v. Daniels*, 187 Ill. 2d 301, 307, 718 N.E.2d 149 (1999).

In the alternative, he contends that even if the trial court's ruling did not violate the defendant's right to counsel, the trial court abused its discretion in so limiting counsel's representation where possible neglect was shown regarding the pretrial identification procedures.

As we detailed at length in the Background section, the trial court made an extensive preliminary inquiry into the defendant's complaints about his trial counsel on remand from the supreme court. The trial judge was also very familiar with the pretrial and trial proceedings in this case as he presided over the defendant's bench trial. Ultimately the trial judge concluded that only the defendant's complaint about the trial counsel's preparation of his alibi defense warranted further investigation. The trial judge rejected all identification-based complaints regarding witness Ms. Smothers, who testified at trial.

## Appointed Counsel

We first address the defendant's claim that the trial court's ruling impinged upon his sixth amendment right to counsel. The issue as he states it is: whether "the trial court deprived Corey Moore of his constitutional right to counsel by limiting post-trial counsel's appointment to the single claim of ineffective assistance contained in Mr. Moore's *pro se* post trial motion which the court found to show possible neglect of the case." We understand the defendant's contention to be that once the trial court determined that new counsel should be appointed, no restriction on appointed counsel's efforts on the defendant's behalf can be imposed without impermissibly curtailing a defendant's constitutional right to counsel.

The defendant states in his main brief that his "research has revealed no cases which deal with the scope of representation either *required by*, or *permitted to*, counsel appointed to assist a defendant who files a *pro se* post-trial motion alleging ineffective assistance of trial counsel." (Emphasis in original.) While we agree that no case has addressed the precise legal issue the defendant urges upon us, *Krankel* and its progeny provide ample authority that the defendant's claim is misguided. When we consider the nature of the preliminary inquiry to be conducted by the trial court under *Krankel*, we are unpersuaded that the trial court may not act on its own finding that "possible neglect" is raised by a single *pro se* complaint by a defendant and limit the scope of the appointment of counsel to that complaint only.

"The appointment of new counsel is not automatically required whenever a defendant files a *pro se* posttrial motion for a new trial based on an ineffective assistance claim. [Citations.] Instead, in such cases, the trial court must conduct a preliminary inquiry to examine the factual basis behind defendant's claim. If the claim is not meritorious, or if it solely concerns matters of trial strategy, then the court may deny the motion without appointing new counsel. [Citations.] It is only when the claim points to possible neglect of the case that new counsel must be appointed under *Krankel*. [Citation.]" *People v. McCarter*, 385 Ill. App. 3d 919, 940, 897 N.E.2d 265 (2008).

New counsel is appointed "so that original counsel [is] relieved of the duty of arguing his own ineffectiveness, a most awkward conflict." *People v. Adams*, 195 Ill. App. 3d 870, 872, 553 N.E.2d 3 (1990). The appointment of new counsel to argue the defendant's posttrial claim of ineffective assistance of trial counsel under section 116—1 of the Criminal Code of 1961 (725 ILCS 5/116—1 (West 2006)) "serves the purpose of allowing the trial court ' "the opportunity to grant a new trial, if warranted." ' " *People v. Cosby*, 231 Ill. 2d 262, 271-72, 898 N.E.2d 603 (2008), quoting *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988), quoting *People v. Caballero*, 102 Ill. 2d 23, 31, 464 N.E.2d 223 (1984).

We begin our analysis with an indisputable point: the defendant was never without the assistance of counsel during the hearings on the defendant's posttrial motions. Following his convictions, APD Carey filed the original posttrial motion. Following remand from the supreme court, appointed counsel litigated the posttrial motion filed *pro se* by the defendant as to his alibi defense.[3] Nonetheless, the defendant contends his constitutional right to counsel was impermissibly curtailed by the trial court's limitation imposed on appointed counsel.

We find the trial court's ruling to be in line with the results in *People v. Parsons*, 222 Ill. App. 3d 823, 830-31, 584 N.E.2d 442 (1991), and *McCarter*, 385 Ill. App. 3d 919, 897 N.E.2d 265, and, consequently, find the ruling did not violate the defendant's right to counsel.

In *Parsons*, we reviewed the defendant's complaints voiced to the trial court during posttrial proceedings about certain omissions by trial counsel. After assessing each of the alleged omissions or errors by defense counsel on which the defendant based his claims of neglect, we determined that only one had potential merit: the failure to call Nemerow, a possibly favorable witness, "whom defendant's counsel repeatedly stated in the record would be a witness at trial." *Parsons*, 222 Ill. App. 3d at 830. We remanded for clarification on the single issue of trial counsel's failure to call this witness. Our direction on remand was exact: "If, for example, defendant's trial counsel indicates to the court that Nemerow was in fact interviewed and that counsel determined Nemerow's testimony would not be helpful to defendant, then the matter would clearly be one of trial strategy, and defendant's informal *pro se* motion would properly be denied." *Parsons*, 222 Ill. App. 3d at 831. We emphasized we were not remanding for appoint-

---

[3]Of course, the posttrial motions filed by trial counsel and the defendant *pro se* are spread of record and may serve as a vehicle to present issues on appeal, to the extent they raise any meritorious claims.

ment of counsel and a full evidentiary hearing; rather, our remand was limited to conducting an inquiry mandated by *People v. Nitz*, 143 Ill. 2d 82, 672 N.E.2d 895 (1991), on the single *pro se* claim of failure to call witness Nemerow. *Parsons*, 222 Ill. App. 3d at 830-31.

In *McCarter*, the defendant raised two areas of complaints before the trial judge: "first, his allegation that trial counsel failed to call witnesses who would have provided an alibi for him, and second, his allegation that his trial counsel proceeded with a jury trial despite his wish for a bench trial." *McCarter*, 385 Ill. App. 3d at 941. We found no error in the trial court's denial of the defendant's first complaint, but found the trial court's inquiry into the defendant's complaint concerning his wish for a bench trial was insufficient under *Krankel* and its progeny. *McCarter*, 385 Ill. App. 3d at 941-44. We remanded the cause to the trial court to clarify the basis for the trial court's implied ruling that the defendant's second claim was "spurious." *McCarter*, 385 Ill. App. 3d at 944.

In *McCarter* and *Parsons* we considered the merits of each defendant's complaints following his conviction. In each case, we found some to have merit, others not. As to those with merit, our mandate directed the circuit court to make a preliminary inquiry under *Krankel*. Our mandate made no provision for the trial court to expand the subject of the preliminary inquiry under *Krankel* on remand. See *PSL Realty Co. v. Granite Investment Co.*, 86 Ill. 2d 291, 308, 427 N.E.2d 563 (1981) ("The trial court may only do those things directed in the mandate"). We limited the circuit court's consideration to only those complaints in the defendant's *pro se* posttrial motion that we found might have merit.

As a court of review, we are no less bound to uphold the constitutional rights of an accused than a circuit court. No authority is needed for this legal proposition. We discern no difference between the trial court limiting appointed counsel's consideration to only those complaints that support a claim of "possible neglect" and the appellate court limiting the trial court's consideration to only those complaints we find to warrant a preliminary inquiry under *Krankel*, which in turn might warrant appointment of new counsel. Upon remand from this court, if new counsel is appointed by the trial court, the scope of his appointment is no broader than the scope of the mandate issued to the trial court. See *PSL Realty Co.*, 86 Ill. 2d at 308 ("The trial court may only do those things directed in the mandate").

We acknowledge the defendant's argument that "there exists a compelling policy reason to allow appointed post-trial counsel the same latitude afforded to appointed post-conviction counsel." He asserts that the law requires appointed postconviction counsel to

investigate all claims raised by the defendant's *pro se* petition for post-conviction relief, while at the same time, permits counsel to present any additional claims he chooses to investigate. See, *e.g.*, *People v. Davis*, 156 Ill. 2d 149, 163-65, 619 N.E.2d 750 (1993). The defendant concedes that even appointed postconviction counsel is not required to investigate those *pro se* claims found insufficient to necessitate counsel's appointment by the circuit court, but argues "both justice and judicial economy would best be served if counsel appointed for that purpose, had, at the very least, the discretion to investigate all of the claims his or her client asserted in their *pro se* post-trial motion." Of course, a defendant is not constitutionally entitled to assistance of postconviction counsel as such assistance is a creation of statute, not assistance contemplated by the sixth amendment. *Davis*, 156 Ill. 2d at 158-59. But more to the point, we do not read the trial court's limitation in this case to be one on counsel's discretion where no mandate by a reviewing court was issued.

In this regard we repeat what the supreme court stated in the context of the duties of appointed postconviction counsel: "While postconviction counsel *may* conduct a broader examination of the record [than the issues raised in the *pro se* petition might require] [citation], and may raise additional issues if he or she so chooses, there is no obligation to do so." (Emphasis in original.) *People v. Pendleton*, 223 Ill. 2d 458, 476, 861 N.E.2d 999 (2006). This is precisely the point attorney Kling made when he succinctly responded to the State's urging that counsel's appointment was very narrow: "Judge, I think the easy answer is I will file whatever I am going to file. If you are not going to consider it, you will strike it." The trial court made clear it imposed no limitation on attorney Kling's efforts or discretion: "[W]e will find out what [Mr. Kling] is filing" and deal with any objections then.

Nor should our rejection of the broad claims of the defendant here be read to restrict or limit appointed counsel's efforts to carry out his ethical duty to an indigent defendant. We know of no rule that precludes appointed counsel from requesting that the trial court consider other claims of possible neglect that he may discover in carrying out the precise duty of his appointment. Attorney Kling noted as much when he indicated he would file what he would file, being fully aware that the trial court would determine whether further action by counsel is warranted. (Of course, attorney Kling presented nothing further in this case.) In this sense, appointed counsel's discretion is not unlike the discretion noted by the defendant of postconviction counsel in that he *may* consider other areas of possible neglect that he comes across in carrying out his appointed duty and, in such an event, take steps to alert the trial court. However, we find no authority that

counsel is under a sixth amendment obligation to do so or that counsel's limited appointment to *investigate* a specific complaint impermissibly curtails a defendant's right to counsel. This observation is in line with general statements in the progeny of *Krankel*. See *Nitz*, 143 Ill. 2d at 134-35 ("the court should appoint new counsel to *argue* defendant's claims of ineffective assistance of counsel" (emphasis added)); *People v. Sims*, 167 Ill. 2d 483, 518, 658 N.E.2d 413 (1995) ("A defendant's post-trial argument that he has been deprived of the effective assistance of counsel may warrant appointment of a new attorney to *present* the defendant's claims" (emphasis added)).

Finally, it must not be forgotten that the proceedings below addressed the defendant's *pro se* posttrial motion. "If the trial court denies the motion, defendant may still appeal his assertion of ineffective assistance of counsel along with his other assignments of error." *Moore*, 207 Ill. 2d at 81-82. Vindication may still come to those defendants with meritorious claims of error rejected by the circuit court as not warranting a new trial. See 725 ILCS 5/116—1 (West 2006). In this regard, we repeat our observation: the defendant does not substantively challenge before us any ruling by the trial court during the course of the trial as asserted in either of the two posttrial motions. The record amply demonstrates why.

Absent clear authority to the contrary, we find no basis to conclude that the trial court's ruling limiting appointed counsel under *Krankel* to a single issue of possible neglect impermissibly curtailed the defendant's right to counsel under the sixth amendment. Under a manifestly erroneous standard, we hold the trial court properly limited the scope of counsel's appointment to the defendant's alibi defense. *McCarter*, 385 Ill. App. 3d at 942 (decision to decline to appoint new counsel for a defendant on an ineffective assistance claim will not be overturned unless the decision is "manifestly erroneous").

## Claim of Abuse of Discretion

In the alternative, the defendant argues that even if the trial court properly limited posttrial counsel's appointment to only the single claim the court found had potential merit, the court abused its discretion by refusing to appoint new counsel to investigate the defendant's *pro se* posttrial claim of ineffective assistance regarding counsel's failure to competently challenge the circumstances of Ms. Smothers's out-of-court identifications of the defendant as the offender.

In a *Krankel* setting, "[t]he operative concern for the reviewing court is whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel." *Moore*, 207 Ill. 2d at 78. The trial court's ruling here is based on its

conclusion that the defendant made no showing of possible neglect as to the defendant's identification claims. A motion to suppress the identifications was litigated before the same trial judge that found no possible neglect on these claims. A court may draw upon its own observations of defense counsel's performance and the adequacy of defendant's allegations on their face. Moore, 207 Ill. 2d at 79.

Ms. Smothers, the identification witness, testified at trial that she saw the defendant dragging Fort to her home the morning of the murder. While she contradicted Detective Abbott's claim that she knew the defendant before seeing him the day of the murder on cross-examination, she testified at trial to both her lineup and photographic identification of the defendant. We are unconvinced that the trial court erred in denying the appointment of counsel to investigate the defendant's claim that her lineup identification of the defendant was a mistake, that she really meant to identify another participant in the lineup.

The trial court similarly rejected the defendant's claim that his photographic identification by the witness was unduly suggestive. We too are unconvinced that but for the display of the single photograph depicting the defendant and Fort, Ms. Smothers would not have identified the defendant.

On the only claim the defendant brings before us that he raised "possible neglect" by his trial counsel on the lineup and photographic identifications, which entitles him to have this cause remanded to the trial court for further investigative proceedings, we see no reason for a further remand. Cf. People v. Finley, 222 Ill. App. 3d 571, 584, 584 N.E.2d 276 (1991) (because missing witness could have had a serious impact on case, their absence "could conceivably support an ineffective assistance of counsel claim"). Whether under an abuse of discretion standard or under the McCarter standard of "manifestly erroneous," we find no error here. McCarter, 385 Ill. App. 3d at 941 (rejection of request for new counsel reviewed under "manifestly erroneous" standard). To the extent the defendant believes that a greater effort was required to gather the additional evidence he contends would demonstrate the merits of his claims, he must look to the Post-Conviction Hearing Act for relief. See 725 ILCS 5/122—1 et seq. (West 2006).

## CONCLUSION

Based on Krankel and its progeny, we find the trial court properly limited the scope of appointed counsel to the one issue the trial court found had potential merit: the defendant's alibi defense. Additionally, we find no manifest error in the trial court's determination that the

defendant's allegations of ineffective assistance based on the identification claims are without merit; the court properly declined to appoint new counsel to pursue those claims further.

For these reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

R. GORDON, P.J., and HALL, J., concur.