No. 3-07-0006
_____
Filed November 7, 2008

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2008

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the Tenth Judicial Circuit Peoria County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 05-CF-351 |
| SHONE L. JONES | ) ) | Honorable Scott Shore |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LYTTON delivered the Opinion of the court:
_____

Defendant, Shone Jones, was charged with a 13-count indictment. Defendant's attorney requested a hearing to determine defendant's fitness to stand trial. A jury found defendant fit, and defendant's case proceeded to trial. After all of the evidence had been presented at trial, defense counsel moved for a mistrial so that defendant could be examined for fitness. The trial court denied the motion. Defendant was found guilty of 11 of the charges against him and was sentenced to 25 years in prison. On appeal, defendant argues that the trial court erred in finding him fit to stand trial and denying his motion for a mistrial. We reverse and remand.

BACKGROUND

In April, 2005, defendant was charged with four counts of armed violence, three counts of aggravated discharge of a firearm, three counts of aggravated unlawful restraint, one count of unlawful possession by a felon, one count of criminal damage to property, and one count of unlawful possession of a controlled substance. In June, 2005, defendant's attorney, Thomas Iben, asked that defendant undergo a psychiatric evaluation.

On August 3, 2005, defendant wrote a handwritten note to the trial judge alleging that Iben violated his sixth amendment rights. The trial judge construed the note to be a motion for new counsel and scheduled a hearing on the motion. On August 9, 22, and 23, 2005, defendant submitted handwritten correspondence to the court in which he alleged that the State filed fabricated and fraudulent documents, that Iben was working against him, that Iben and the assistant State's Attorney, Joseph Bembenek, committed misconduct, and that the court was practicing "illegal justice."

On August 26, 2006, the trial court held a hearing on defendant's motion for new counsel. At that hearing, defendant accused Iben of violating his constitutional rights. The trial court granted defendant's request for new counsel. Hugh Toner was appointed as defendant's new counsel.

On September 21, 2005, the trial court received three more handwritten letters from defendant. In those letters, defendant

2

accused Iben of being involved in a conspiracy with the State and accused Judge Galley of professional violations. On September 28, 2005, Toner filed a motion to require defendant to undergo a psychological examination. During the hearing on that motion, defendant disrupted the court and was warned that the hearing would be held without him if he continued to be disruptive.

On October 6 and 9, 2005, defendant sent nine more letters to the trial court, alleging that Judge Galley, Judge Shore, Toner and Bembenek all committed constitutional and/or ethical violations. He claimed that all of the attorneys and judges were against him. From October 12 to November 10, 2005, defendant sent eight more letters to the court, accusing the circuit clerk's office of assisting the State in criminal acts and alleged that the State and police were involved in a conspiracy against him.

On November 28, 2005, Toner notified the court that defendant was not cooperating with him regarding the psychological evaluation. At that time, the trial court admonished defendant that he should cease writing letters to the court. Defendant said he understood.

On December 9 and 13, 2005, defendant sent five more letters to the trial court, alleging that Judge Galley, Bembenek, Iben and Toner all defrauded the court and displayed "a pattern of misconduct." On December 14, 2005, defendant sent a handwritten motion to suppress evidence along with a handwritten letter to the

3

clerk of the court. In his letter, defendant alleged that "something * * * wasn't right about [the] court reporter who was at my hearing Dec. 7, 2005. Her fingers wasn't moving like they suppose too [sic]."

On December 21, 2005, Toner notified the court in writing that he believed there was a bona fide doubt as to defendant's fitness and requested a hearing before a jury to determine if defendant was fit to stand trial. From December 28, 2005 to February 9, 2006, defendant sent several more letters to the trial court. In those letters, he alleged that Bembenek framed him, that Toner was not effectively representing him and that police officers involved in his case falsified documents and lied to the grand jury.

On February 17, 2006, Toner requested that defendant be appointed a separate attorney to represent him during the fitness hearing. The trial court granted the request and entered an order stating: "Court finds bona fide doubt as to Defendant's fitness." Marcia Straub was appointed to represent defendant at the fitness hearing. From March 24 to May 15, 2005, defendant sent several more handwritten letters to the court, alleging that "everybody in this case has been showing bias against me."

On June 20, 2006, a hearing in front of a jury to determine defendant's fitness to stand trial began. The State and defense counsel stipulated that all of the letters defendant filed with the court between August 9, 2005 and December 14, 2005 would be

4

considered by the jury as evidence.

The State's only witness was Dr. Sohee Lee, an expert in the field of psychiatry. Dr. Lee attempted to interview defendant on two different occasions. On the first occasion, defendant told Dr. Lee that he didn't want to talk to him because he would "just make a story and try to turn me as a crazy person and put me away to the crazy house." On the second occasion, defendant refused to say anything to Dr. Lee.

Dr. Lee reviewed the police reports, grand jury transcript and correspondence that defendant sent to the court and concluded that defendant was probably suffering from a grandiose and persecutory type of delusional disorder. According to Dr. Lee, defendant believes he was falsely accused and illegally detained and that the entire court system is trying to punish him. Dr. Lee saw evidence of this from the police report and defendant's letters.

Dr. Lee also concluded that defendant has false beliefs and misinterprets reality, such as his belief that the court reporter was "acting funny." Because of defendant's delusions, Dr. Lee thought that defendant would not be able to comprehend the charges against him or cooperate with his defense attorney. Dr. Lee testified that there was a substantial probability that defendant would attain fitness within one year if he was properly medicated.

Defendant presented himself as his only witness. Defendant's jaw was wired shut, so he responded to questions in writing. He

5

was able to identify his current and former attorneys, as well as the current and former judges in his case. He knew that he was charged with 13 counts and said that he was able to understand the charges against him. He testified that he told Dr. Lee that he didn't want to talk because he "didn't need no examination to beat the case."

The jury found defendant fit to stand trial, and the trial court entered an order reflecting the jury's decision. On June 30, 2006, Toner filed a notice of intent to rely on the defense of insanity in defendant's trial. The trial court appointed Dr. Lee to conduct a psychiatric evaluation of defendant and told defendant that if he did not cooperate in the examination, he may be barred from raising an insanity defense. On July 3, 2006, defendant wrote two more letters to the court in which he accused Toner of ethics violations and falsifying evidence.

On July 15, 2006, Dr. Lee appeared at the Peoria County Jail to perform his psychiatric examination of defendant. Defendant again refused to speak to Dr. Lee. On July 19, 2006, the State filed a motion to bar defendant from offering any evidence of insanity. On July 20, 2006, the trial court ruled that defendant was barred from producing expert evidence or testimony of insanity. On the same day, Toner advised the court that defendant accused him of putting a contract or hit out on him. The trial court found the charge baseless. The record reflects that defendant was

6

"jabbering" throughout the court proceeding and had to be warned by the trial judge to "be more cooperative."

On August 2, 2006, Toner advised the court that defendant was refusing to talk and cooperate with him. The trial court ordered defendant to cooperate with Toner. On August 4, 2006, defendant sent another letter to the trial court, accusing the clerk, court reporters and judges of "fraud and criminal acts."

Before jury selection in defendant's trial began on August 28, 2006, the trial court advised defendant that he had the right to wear street clothes and not be visibly shackled, but defendant chose to wear his prison attire and hand and feet shackles. Toner again advised the court that he did not believe that defendant was fit to stand trial. The trial court replied, "On the issue of fitness, we've gone over all of this." Before the jury entered the courtroom, the court reminded defendant that he did not have to wear shackles. At that time, defendant requested that his wrist shackles be removed but wanted the leg shackles to remain.

On the second day of trial, the trial court again questioned defendant about his desire to be shackled and in prison garb. This time, defendant told the court that he wanted to wear street clothes and be unshackled.

On the third day of trial, defendant addressed the court and accused Toner of "not abiding by the scopes of representation, misconduct, dishonesty, deceit, misrepresentation" and "not

7

addressing the issue I want to address." Toner explained that "for a long period of time, my client wouldn't talk to me." Toner stated that he would have called some witnesses on defendant's behalf, but defendant would not permit it.

After the close of evidence, Toner requested a mistrial "for the purpose of having [defendant] examined for fitness." According to Toner, defendant was "unable to truly assist in preparation and participating in the [trial] process, because he becomes obsessed and focused on essentially what have been described as * * * almost a paranoid fascination of delusion that people are out to get him." The trial court denied the motion, explaining that although he was initially concerned with defendant's decision to wear jail clothing and remained shackled "that did not raise a sufficient concern as to fitness of the Defendant for me to find [a] bona fide doubt, and the issue has been previously addressed by a jury, and I accept the verdict that was previously rendered that the Defendant was, in fact, fit to proceed to trial."

The jury found defendant guilty of four counts of armed violence, two counts of aggravated discharge of a firearm, two counts of aggravated unlawful restraint and one count each of unlawful possession of a weapon by a felon, criminal damage to property and unlawful possession of a controlled substance.

Defense counsel filed a motion for a new trial, arguing in part that the court erred in "allowing the Jury verdict on the

8

issue of Fitness" and "denying the Defense's motion for a mistrial concerning the Defendant's mental status." On December 4, 2006, defendant sent a final letter to the trial court, again alleging that his constitutional and statutory rights had been violated and asserting that "[a]s far as I can tell everything is illegal that have anything do with my case."

On December 22, 2006, the trial court held a hearing on post-trial motions and sentencing. The court heard arguments on defense counsel's motion for a new trial and on defendant's claims that Toner did not effectively represent him. The trial court denied the motion for a new trial and found that defendant's allegations against Toner did not raise a bona fide issue as to ineffective assistance. The trial court then sentenced defendant to 25 years imprisonment.

ANALYSIS

I.

Defendant argues that the trial court erred in finding him fit to stand trial because the State conceded that he was unfit, the uncontradicted expert testimony was that he was unfit and defense counsel repeatedly advised the court that defendant was not assisting in his defense.

The due process clause of the fourteenth amendment bars

9

prosecuting a defendant who is unfit to stand trial. People v. Shum, 207 Ill. 2d 47, 57, 797 N.E.2d 609, 615 (2003). A defendant is unfit to stand trial if, based on a mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense. 725 ILCS 5/104-10 (West 2006); People v. Burton, 184 Ill. 2d 1, 13, 703 N.E.2d 49, 55 (1998).

When a bona fide doubt of defendant's fitness has been raised, the party alleging that defendant is fit has the burden of proving, by a preponderance of the evidence, that defendant is fit to stand trial. See People v. Baugh, 358 Ill. App. 3d 718, 732, 832 N.E.2d 903, 915 (2005). A court's ruling on the issue of fitness will be reversed if it is against the manifest weight of the evidence. People v. Jamison, 197 Ill. 2d 135, 153, 756 N.E.2d 788, 797 (2001); Burton, 184 Ill. 2d at 13, 703 N.E.2d at 55.

In reaching its fitness determination, the trial court is not required to accept the opinions of psychiatrists. People v. Baldwin, 185 Ill. App. 3d 1079, 1086, 541 N.E.2d 1315, 1320 (1989). The trial court should assess the credibility and weight to give an expert's testimony and independently analyze and evaluate the factual basis for the expert's opinion. See Baugh, 358 Ill. App. 3d at 732, 832 N.E.2d at 915; Baldwin, 185 Ill. App. 3d at 1086, 541 N.E.2d at 1320. However, a trial court cannot reject an expert's opinion that a defendant is unfit without testimony or

10

evidence that defendant was fit, other than defendant's own statement.  See People v. McKinstray, 30 Ill. 2d 611, 616-17, 198 N.E.2d 829, 832 (1964); People v. Schoreck, No. 2-06-0452, slip op. at 21-24 (Ill. App. Aug. 15, 2008); Baldwin, 185 Ill. App. 3d at 1087, 541 N.E.2d at 1321.

An incompetent defendant is not a reliable witness regarding his own competency.  See McKinstray, 30 Ill. 2d at 616-17, 198 N.E.2d at 832; Schoreck, No. 2-06-0452, slip op. at 21-22; Baldwin, 185 Ill. App. 3d at 1086, 541 N.E.2d at 1320.  As explained by our supreme court in McKinstray:

> "To accept defendant's opinion that he is able to co-operate with counsel in his defense, when the purpose of the hearing is to determine that very fact, would make a sham out of the sanity hearing, especially here where there is * * * the opinion of the sole medical witness that the defendant, although understanding the nature of the crime with which he was charged, was unable to co-operate with his counsel * * *."  McKinstray, 30 Ill.2d at 616-17, 198 N.E.2d at 832.

Similarly, the court in Schoreck held that a trial court cannot consider a defendant's opinions about whether he is fit to stand trial, understands the proceedings against him or can participate in his defense, "for such would be clear question-begging" and "would circumvent the fitness inquiry." Schoreck, No. 2-06-0452,

11

slip op. at 21 and 22.

Here, defendant provided his opinion at the fitness hearing that he understood the proceedings against him. The only other evidence presented was the uncontradicted testimony of the psychiatric expert, Dr. Lee, who testified that defendant suffered from a grandiose and persecutory type of delusional disorder that rendered him unable to understand the charges against him and unable to assist in his defense. Dr. Lee 's opinion was supported by his review of many documents, including over 30 letters defendant wrote to the court showing defendant's false beliefs and misinterpretation of reality.

Since the uncontradicted expert testimony was that defendant was unfit and the only evidence to the contrary was defendant's own statement, the jury's conclusion that defendant was fit to stand trial was against the manifest weight of the evidence. See McKinstray, 30 Ill. 2d at 616-17, 198 N.E.2d at 832; Baldwin, 185 Ill. App. 3d at 1087, 541 N.E.2d at 1321. The trial court should not have entered an order finding defendant fit based on the jury's verdict but should have entered a directed verdict of unfitness based on the evidence presented. See McKinstray, 30 Ill. 2d at 617, 198 N.E.2d at 832.

Because defendant was unfit to stand trial two months before his trial and no subsequent hearing was held finding defendant fit, defendant should not have been placed on trial. See Shum, 207 Ill.

12

2d at 57, 797 N.E.2d at 615.  The judgment convicting defendant must be reversed.  See <u>McKinstray</u>, 30 Ill. 2d at 617, 198 N.E.2d at 832.  On remand, the trial court shall conduct a new hearing to determine if defendant is now fit to stand trial.  See 725 ILCS 5/104-16 (West 2006).

## II.

Because we find that the jury's finding of fitness was against the manifest weight of the evidence and reverse defendants' convictions on that basis, we need not consider defendant's additional argument that the trial court erred in denying the motion for a mistrial.

## CONCLUSION

The judgment of the Circuit Court of Peoria County is reversed and remanded.

Reversed and remanded.

MCDADE, PJ., and WRIGHT, J., concurring.