# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Tolefree*, 2011 IL App (1st) 100689

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JARVIS TOLEFREE, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-10-0689 |
| Filed | August 12, 2011 |
| Rehearing denied | December 13, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for driving on a suspended license and driving without insurance were upheld over his contentions that the trial court failed to conduct an adequate *Krankel* hearing as to his claim of ineffective assistance of counsel and erred by not ordering a fitness hearing. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. TJ-138-734; the Hon. Raymond Mitchell, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and Jennifer L. Bontrager, all of State Appellate Defender's Office, of Chicago, for appellee.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary Needham, Eve Reilly, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE R. GORDON delivered the judgment of the court, with opinion.

Justices Cahill and McBride concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant Jarvis Tolefree was convicted by a jury of driving on a suspended license and driving without insurance. The trial court sentenced defendant to 1 year of conditional discharge and 10 days in the Sheriff's Work Alternative Program, and assessed a fine in the amount of $515. Defendant filed a motion to reconsider and a posttrial motion for a new trial, both of which were denied by the trial court. Defendant appeals arguing that the trial court (1) failed to make an appropriate inquiry into defendant's *pro se* posttrial claims that he was deprived of effective assistance of counsel, and (2) erred by not ordering a fitness hearing for defendant after his conduct raised a *bona fide* doubt as to his fitness to stand trial. We affirm.

¶ 2                        BACKGROUND

¶ 3     Defendant was arrested for driving on a suspended license, driving without insurance, driving without headlights after sunset, and possession of title or registration not authorized for use on his vehicle. Defendant received a jury trial on the driving on a suspended license and driving without insurance charges, which commenced on August 25, 2009. The remaining charges were to be determined by a later bench trial.

¶ 4     At a pretrial hearing, the trial court asked defendant if he had an attorney. Defendant replied that he did not and "told the judge my car was on autopilot." The trial court appointed the Cook County Public Defender's Office to represent defendant. At a later pretrial hearing, defendant declined to sign a jury waiver for a bench trial scheduled for June 11, 2009. Defendant's counsel informed the trial court that communication with defendant had been "somewhat difficult."

¶ 5     At trial, the State called Chicago police officer Bond as its only witness on its behalf. Officer Bond testified that at approximately 10 p.m. on August 2, 2006, he and Officer Romero were driving southbound on Laramie Street, when he observed defendant driving northbound without his vehicle's headlights on. Officer Bond made a U-turn, activated his

emergency lights, and pulled defendant over into an alley behind West Gladys Street. Officer Bond testified that after he pulled defendant over, he observed defendant in the driver's seat and no one else in the vehicle. Officer Bond exited his vehicle, approached defendant's vehicle, and asked defendant for his license and insurance. Defendant responded, "I'm suspended. I don't have insurance." Officer Bond testified that he verified through the LEADS computer system that defendant did not have a valid driver's license. Defendant was then arrested.

¶ 6      On cross-examination, defense counsel questioned Officer Bond about the validity of the alleged traffic stop, but not about the validity of the defendant's driver's license. Specifically, counsel asked whether Officer Bond had affected a traffic stop or had approached defendant's vehicle while it was parked in the Gladys Street alley. Officer Bond denied approaching defendant's vehicle while it was parked in the alley.

¶ 7      The State produced a certified driving abstract of defendant from the Secretary of State indicating that defendant's driver's license was suspended on August 2, 2006, and offered it into evidence without objection.

¶ 8      Defendant testified on his own behalf. He first testified that he was exiting his vehicle parked behind his house when Officer Bond approached him. Defendant then testified that he was already outside his vehicle in the Gladys Street alley when Officer Bond approached him. On cross-examination, defendant admitted that the Gladys Street alley is five blocks from his house. Defendant persisted that Officer Bond did not pull him over because he was already out of his vehicle or exiting his vehicle. Defendant testified that Officer Bond questioned him about his headlights and indicated there was "no evidence *** proving that I didn't have–I had [head]lights on my car." He further testified, "I can't remember [Officer Bond] asking me anything." He then testified Officer Bond searched his vehicle for drugs and, having found none, arrested him for "no headlights." Defendant testified that his vehicle was not returned to him for 15 days because "[his] car was stolen, taken from [him], racketeering" and the city of Chicago took his vehicle "by racketeering." Defendant did not testify about whether he had a valid driver's license or insurance.

¶ 9      On cross-examination, defendant admitted his vehicle was in the Gladys Street alley and not at his home. The State questioned defendant about how his vehicle ended up in the Gladys Street alley, and defendant responded, "I speak the fifth." Defendant testified he was outside his vehicle and Officer Bond "was talking about some lights." The State questioned defendant about why he was in the Gladys Street alley, and defendant responded, "I pleads the fifth." Defendant further testified that he parked his vehicle in different places to avoid receiving a ticket because his vehicle tags were "messed up." After defendant testified, the defense rested.

¶ 10      After the jury found defendant guilty of driving on a suspended license and driving without insurance, defendant rejected the State's offer for an agreed sentence that would have disposed of his remaining cases. At the sentencing hearing on September 1, 2009, defendant raised concerns about his counsel's conduct of his trial and the following colloquy took place:

"THE COURT: Mr. Tolefree, do you have anything to say about this [proposed

-3-

sentence]?

***

DEFENDANT: My trial was just a one sided trial. The jury came in, the evidence of my car, that I had a license, I wasn't able to cross examine the officer or whatever. He pulled up–it was very important and central that I cross examine the officer. He came and–whether he–whether he was looking for drugs or I didn't have a license and on the–if my car would have been there there was evidence they wasn't supposed to expose my car before the evidence was taken to prove my point that–it would put the lack–the right evidence that I have a license.

THE COURT: Well, I understand your position as you know I presided at trial. I think you were very ably represented by two fine defense attorneys and the jury heard the evidence and I think they have a different view of it than you do.

DEFENDANT: They put on one sided evidence. I wasn't able to cross-examine [Officer Bond] on the evidence on whether I had a license or not.

THE COURT: You did have the opportunity to testify and the jury did hear that but that's something for you to take up in a posttrial motion and on appeal as is your right but I think you should–you should know that you were very well represented at trial."

On appeal, defendant claims that this colloquy shows that the trial court failed to inquire into his claims of ineffective assistance of counsel.

¶ 11    After the sentence was imposed, defendant's counsel informed the trial court that defendant "doesn't feel *** that he got a fair trial or he doesn't feel that he was represented in the manner in which he wanted to be represented." Defendant's counsel requested that the Cook County Public Defender's Office be allowed to withdraw from defendant's remaining cases. The trial court responded:

"THE COURT: I don't think it's appropriate for me to arbitrate what attorney represents Mr. Tolefree. Mr. Tolefree you have the absolute right to be represented by counsel, counsel of your choice, you have here these two fine lawyers who represented you at the jury trial and did a very fine job. It's certainly a matter that is entirely in your discretion, sir, if you wish to seek substitution of counsel ***."

Defendant responded that he wanted to appeal the jury's verdict, and the trial court then set a future trial date for defendant's remaining cases.

¶ 12    Defendant filed a motion to reconsider and a posttrial motion for a new trial. At the hearing on the posttrial motions on October 8, 2009, defendant claimed that, at trial, he was not able to cross-examine "the state's opinions." The court responded:

"THE COURT: Well, Mr. Tolefree, you were represented by very able counsel at trial. He did a very good job for you with what was a difficult case. I heard the evidence in the case, I was the presiding judge, you had a very fair trial and I think you also received what was a very fair sentence ***."

¶ 13    The court denied the motion to reconsider and motion for a new trial. This timely appeal follows.

¶ 14                                    ANALYSIS

¶ 15    On appeal, defendant argues: (1) that pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), and its progeny, the trial court failed to conduct any inquiry into defendant's oral *pro se* posttrial claim that he was denied effective assistance of counsel and deprived of a fair trial, and (2) the trial court erred by not ordering a fitness hearing for defendant after his conduct raised a *bona fide* doubt as to his fitness.

¶ 16                          I. Ineffective Assistance of Counsel

¶ 17    Defendant's statements at his sentencing and posttrial motion hearings about his dissatisfaction concerning his attorney were sufficient to raise an ineffective assistance of counsel claim. *People v. Parsons*, 222 Ill. App. 3d 823, 826 (1991) (defendant's statements at the posttrial motion hearing about neglect by his trial counsel were sufficient to raise an ineffective assistance of counsel claim); *People v. Giles*, 261 Ill. App. 3d 833, 846-47 (1994) (defendant's letter to the trial court criticizing his trial counsel's performance was sufficient); *People v. Finley*, 222 Ill. App. 3d 571, 576 (1991) (defendant's letters to the trial court about a witness not called by his trial counsel were sufficient). "[A] *pro se* defendant is not required to do any more than bring his or her claim to the trial court's attention ***." *People v. Moore*, 207 Ill. 2d 68, 79 (2003). Defense counsel further informed the trial court at the hearing on the posttrial motions that defendant "doesn't feel *** that he got a fair trial or he doesn't feel that he was represented in the manner in which he wanted to be represented."

¶ 18    The Illinois Supreme Court has held that, to determine whether a defendant was denied his or her right to effective assistance of counsel, we must apply the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Colon*, 225 Ill. 2d 125, 135 (2007) (citing *People v. Albanese*, 104 Ill. 2d 504 (1984) (adopting *Strickland*)). Under *Strickland*, a defendant must prove both that (1) his attorney's performance was deficient; and (2) the deficient performance prejudiced the defendant. *Colon*, 225 Ill. 2d at 135; *People v. Evans*, 209 Ill. 2d 194, 219-20 (2004); *Strickland*, 466 U.S. at 687-94.

¶ 19    Under the first prong of the *Strickland* test, a defendant must prove that his counsel's performance fell below an objective standard of reasonableness "under prevailing professional norms." *Colon*, 225 Ill. 2d at 135; *Evans*, 209 Ill. 2d at 220. Under the second prong, a defendant must show that, "but for" his counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *Colon*, 225 Ill. 2d at 135; *Evans*, 209 Ill. 2d at 220. "[A] reasonable probability that the result would have been different is a probability sufficient to undermine confidence in the outcome–or put another way, that counsel's deficient performance rendered the result of the trial unreliable or fundamentally unfair." *Evans*, 209 Ill. 2d at 220; *Colon*, 225 Ill. 2d at 135. In other words, the defendant must have been prejudiced by his attorney's performance. To prevail, a defendant must satisfy both prongs of the *Strickland* test. *Colon*, 225 Ill. 2d at 135; *Evans*, 209 Ill. 2d at 220. "That is, if an ineffective-assistance claim can be disposed of because the defendant suffered no prejudice, we need not determine whether counsel's performance was deficient." *People v. Graham*, 206 Ill. 2d 465, 476 (2003).

¶ 20                                    A. Application of *Krankel*

¶ 21        Through *People v. Krankel* and its progeny, the Illinois Supreme Court has provided our trial courts with a clear blueprint for the handling of posttrial *pro se* claims of ineffective assistance of counsel.[1] See also *People v. Moore*, 207 Ill. 2d 68, 77-82 (2003) (discussing *Krankel* and its progeny); *People v. Chapman*, 194 Ill. 2d 186, 227-31 (2000) (same); *People v. Johnson*, 159 Ill. 2d 97, 124 (1994) (same); *People v. Nitz*, 143 Ill. 2d 82, 133-36 (1991) (same). A trial court is not automatically required to appoint new counsel anytime a defendant claims ineffective assistance of counsel. *Moore*, 207 Ill. 2d at 77; *Chapman*, 194 Ill. 2d at 230; *Johnson*, 159 Ill. 2d at 124; *Nitz*, 143 Ill. 2d at 134. Instead, the trial court must first conduct an inquiry to examine the factual basis underlying a defendant's claim. *Moore*, 207 Ill. 2d at 77-78; *Chapman*, 194 Ill. 2d at 230; *Johnson*, 159 Ill. 2d at 124; *Nitz*, 143 Ill. 2d at 134.

¶ 22        A trial court may base its *Krankel* decision on: (1) the trial counsel's answers and explanations; (2) a "brief discussion between the trial court and the defendant"; or (3) "its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face." *Moore*, 207 Ill. 2d at 78-79; *Chapman,* 194 Ill. 2d at 228-31; *People v. Peacock*, 359 Ill. App. 3d 326, 339 (2005). "If [a] trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion." *Moore*, 207 Ill. 2d at 78; *Chapman*, 194 Ill. 2d at 230; *Johnson*, 159 Ill. 2d at 124. A claim lacks merit if it is " 'conclusory, misleading, or legally immaterial' or do[es] 'not bring to the trial court's attention a colorable claim of ineffective assistance of counsel.' " *People v. Burks*, 343 Ill. App. 3d 765, 774 (2003) (quoting *Johnson*, 159 Ill. 2d at 126). However, if a defendant's claims "indicate that trial counsel neglected defendant's case," the trial court must appoint new counsel. *People v. Ramey*, 152 Ill. 2d 41, 52 (1992); *Moore*, 207 Ill. 2d at 78; *Chapman*, 194 Ill. 2d at 230; *Johnson*, 159 Ill. 2d at 124.

¶ 23        On review, even if an appellate court finds that a trial court made an error, it will not reverse if it finds that the error was harmless. *Moore*, 207 Ill. 2d at 80; *Nitz*, 143 Ill. 2d at 135. Our supreme court has held that "[a] trial court's failure to appoint new counsel to argue a defendant's *pro se* posttrial motion claiming ineffective assistance of counsel can be harmless beyond a reasonable doubt." *Moore*, 207 Ill. 2d at 80; *Nitz*, 143 Ill. 2d at 135 (error was harmless, where trial court held hearing to obtain testimony of witnesses whom defendant alleged his counsel should have called, and where defendant was allowed to submit any questions he wanted to ask the witnesses).

¶ 24        However, for the appellate court to be able to conduct a harmless error analysis, there

---

In *Krankel*, the defendant's counsel failed to contact an alibi witness or present an alibi defense at trial. *Krankel*, 102 Ill. 2d at 187-89. Both parties agreed that the trial court should have appointed counsel to represent the defendant at his *pro se* posttrial hearing on whether his counsel was ineffective. *Krankel*, 102 Ill. 2d at 189. The Illinois Supreme Court remanded the case to the trial court for a new hearing on the defendant's oral posttrial motion claiming ineffective assistance of counsel with newly appointed counsel. *Krankel*, 102 Ill. 2d at 189.

must be enough of a record made concerning defendant's claims of ineffective assistance for the appellate court to evaluate the trial court's ruling. *Moore*, 207 Ill. 2d at 81 (no harmless error analysis was possible because "no record at all was made"). If the trial court conducted no inquiry and made no ruling, the appellate court may need to remand for "the limited purpose" of allowing the trial court to make an inquiry and ruling. *Moore*, 207 Ill. 2d at 81 (remanded "for the limited purpose of allowing the trial court to conduct the required preliminary investigation"); *Krankel*, 102 Ill. 2d at 189 (remanded for a new hearing on defendant's *pro se* posttrial motion based on ineffectiveness of trial counsel, with appointed counsel different than trial counsel).

¶ 25    On appeal, the standard of review changes, depending on whether the trial court did or did not determine the merits of defendant's *pro se* posttrial claims of ineffective assistance of counsel. Our supreme court has held that if the trial court made no determination on the merits, then our standard of review is *de novo. Moore*, 207 Ill. 2d at 75. *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). If a trial court has reached a determination on the merits of a defendant's ineffective assistance of counsel claim, we will reverse only if the trial court's action was manifestly erroneous. *People v. McCarter*, 385 Ill. App. 3d 919, 941 (2008). "Manifest error" is error that is clearly plain, evident, and indisputable. *People v. Morgan*, 212 Ill. 2d 148, 155 (2004).

¶ 26    In this case, the trial court reached a determination on the merits of defendant's ineffective assistance of counsel claim. Therefore, we review the trial court's determination for manifest error.

¶ 27                    B. Trial Court's *Krankel* Inquiry

¶ 28    On this appeal, defendant argues that his trial counsel did not cross-examine Officer Bond about: (1) whether Office Bond searched defendant's vehicle for drugs; or (2) whether defendant had a valid driver's license. Therefore, defendant argues that he was deprived of effective assistance of counsel. Defendant asks us to remand his case because the trial court failed to question defendant or his counsel about the basis of his ineffective assistance of counsel claims, and thus failed to conduct an adequate *Krankel* inquiry.

¶ 29    We find that the trial court's failure to conduct further inquiry was harmless error and its ruling was not manifestly erroneous. The trial court presided over the trial and observed and listened to the entire trial, including defendant's testimony and the cross-examination of Officer Bond. The trial court heard defendant testify that Officer Bond searched defendant's vehicle for drugs. The trial court was also aware that Officer Bond was not cross-examined about this search. However, the search of defendant's vehicle for drugs was not relevant because it did not make it more or less likely that defendant drove on a suspended driver's license or drove without insurance.

¶ 30    Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011); see also the initial committee commentary to the rules codifying "current law of evidence in Illinois whenever the Illinois

Supreme Court or the Illinois Appellate Court had clearly spoken on a principle of evidentiary law within the last 50 or so years." Ill. R. Evid., (eff. Jan. 1, 2011), Committee Commentary, at 1; *People v. Free*, 94 Ill. 2d 378, 413 (1983); *Marut v. Costello*, 34 Ill. 2d 125, 128 (1966) (relevancy "established where a fact offered tends to prove a fact in controversy or renders a matter in issue more or less probable").

¶ 31    The trial court could evaluate the relevancy of this testimony based on the charges against defendant and evaluate defendant's claim on its face. *Moore*, 207 Ill. 2d at 78-79; *People v. Towns*, 174 Ill. 2d 453, 466-67 (1996) (defendant's "conclusory" allegations properly denied because they lacked merit or were contradicted by the trial record); *People v. Williams*, 147 Ill. 2d 173, 252 (1991) (defendant's motion properly denied without interchange with defendant or defendant's counsel because "the alleged examples of ineffectiveness unquestionably concerned trial tactics and strategies"). We find harmless any alleged failure by the trial court to conduct further inquiry into defendant's claim that his attorney should have questioned Officer Bond about this vehicle search, because this search was not relevant to whether defendant was driving on a suspended driver's license or driving without insurance.

¶ 32    The trial court also heard Officer Bond's testimony about defendant's suspended driver's license. Officer Bond testified that, when he pulled defendant over, defendant admitted "I'm suspended. I don't have insurance." The officer further testified that he verified through the LEADS computer system that defendant did not have a valid driver's license. The State produced a certified driving abstract of defendant from the Secretary of State indicating that defendant's driver's license was suspended on August 2, 2006, and offered it into evidence without objection.

¶ 33    Following this testimony, defense counsel did not cross-examine Officer Bond about whether defendant had a valid driver's license because the officer had already shown that defendant did not have a valid driver's license through the LEADS computer system, as well as defendant's own admissions. Defense counsel cross-examined Officer Bond on whether he had approached defendant's vehicle while it was parked in the Gladys Street alley to support defendant's theory that he was not driving and therefore could not be guilty of driving on a suspended license.

¶ 34    The decision of whether and how to conduct a cross-examination is generally a matter of trial strategy, which cannot support a claim of ineffective assistance of counsel. *People v. Anderson*, 266 Ill. App. 3d 947, 956 (1994); *People v. Franklin*, 167 Ill. 2d 1, 22 (1995). Defendant has not shown us how defense counsel's failure to cross-examine Officer Bond about the validity of defendant's driver's license was not trial strategy or how it would have affected the outcome of this case. Therefore, we find harmless any alleged failure by the trial court to conduct further inquiry into defendant's claim that his attorney failed to cross-examine Officer Bond about his driver's license.

¶ 35    Defendant argues that "without questioning Tolefree and/or counsel to discern the basis of Tolefree's allegation of ineffectiveness, the trial judge could not properly determine whether further action was required." Defendant cites three cases in which a trial court did not meet its burden under *Krankel* because it failed to question either defendant or

defendant's counsel. We find these cases distinguishable from the case at bar.

¶ 36 The first case that defendant cites is *People v. Vargas*, 396 Ill. App. 3d 465 (2009). Since the parties submitted their briefs in this case, the Illinois Supreme Court has entered a supervisory order that vacated our earlier judgment in *Vargas* and ordered us to reconsider *Vargas* in light of *People v. Thompson*, 238 Ill. 2d 598 (2010). *People v. Vargas*, 239 Ill. 2d 584 (2011) (table). We then entered a new judgment remanding the case for a *Krankel* hearing. *People v. Vargas*, 409 Ill. App. 3d 790 (2011). Accordingly, we refer to our most recent holding in *Vargas*.

¶ 37 In *Vargas*, the defendant was found guilty of first degree murder, attempted first degree murder, and aggravated discharge of a firearm. *Vargas*, 409 Ill. App. 3d at 793. The defendant claimed he received ineffective assistance of counsel because his attorney failed to " 'obtain records and information I advised him was very helpful for my defense strategy.' " *Vargas*, 409 Ill. App. 3d at 800. The defendant did not explain the significance of these "records and information" or describe what he anticipated they would show. The defendant further argued that his attorney failed to " 'review helpful information for motions to litigate prior to the trial date, which he refused to investigate.' " *Vargas*, 409 Ill. App. 3d at 800. The defendant did not describe this information or explain how it would be helpful to him at trial. "The trial judge proceeded immediately into sentencing without even a hint of any response to defendant's grievances," and denied defendant's ineffective assistance of counsel claim. *Vargas*, 409 Ill. App. 3d at 801.

¶ 38 On appeal, we remanded to the trial court to conduct an inquiry consistent with *Krankel*. *Vargas*, 409 Ill. App. 3d at 803. Although the trial court had heard all of the testimony at trial, defendant's motion for ineffective assistance of counsel was based on his attorney's failure to obtain and review unspecified "records and information." These "records and information" "related to matters *de hors* the record and [were] not readily ascertainable by a trial judge." *Vargas*, 409 Ill. App. 3d at 803. Furthermore, defendant's references to "records and information" were "somewhat vague" and "clearly warranted further inquiry" by the trial court to determine if defendant's ineffective assistance of counsel claim had any merit. *Vargas*, 409 Ill. App. 3d at 803.

¶ 39 In the case at bar, defendant's ineffective assistance of counsel claim was based on his attorney's failure to cross-examine Officer Bond about his alleged search of defendant's vehicle for drugs, which has nothing do with the charges brought against defendant for driving on a suspended license and driving without insurance. Unlike *Vargas*, the substance of defendant's claim was found within the trial court record. Defendant did not make a vague reference to additional "records or information" that might be essential to his defense, but clearly indicated the two subjects about which he believed his attorney had failed to cross-examine Officer Bond: whether his vehicle was searched for drugs and whether he had a valid driver's license. The trial court heard defendant testify that Officer Bond allegedly searched his vehicle for drugs and was aware that Officer Bond was not cross-examined about this search. The trial court heard Officer Bond testify about defendant's suspended driver's license. Officer Bond was not cross-examined about the validity of defendant's driver's license because the officer testified that he checked defendant's driving abstract and the State placed in evidence abstract that showed defendant had a suspended driver's license.

Defendant's ineffective assistance of counsel claim did not indicate there was any substance beyond what was already in the trial record that would require a further inquiry under *Krankel*.

¶ 40    The second case defendant cites is *McCarter*. In that case, the defendant claimed ineffective assistance of counsel because his trial counsel (1) failed to call alibi witnesses and (2) proceeded with a jury trial despite the defendant's wish for a bench trial. *McCarter*, 385 Ill. App. 3d at 941. On the first claim, the trial court asked the defendant to explain how these witnesses would change the outcome of the case. *McCarter*, 385 Ill. App. 3d at 927. After the defendant provided the trial court with the witnesses' names and explained the testimony that he anticipated they would give, the trial court denied defendant's motion for ineffective assistance of counsel. *McCarter*, 385 Ill. App. 3d at 942. We affirmed the trial court's inquiry under *Krankel* because it was clear that the "testimony that defendant sought to elicit would not likely be sufficient to reverse the outcome of the case, and *** there was no need to ask defense counsel whether it had sought to procure such testimony." *McCarter*, 385 Ill. App. 3d at 942. We also found that the "trial court made a clear finding based on its knowledge of counsel's actions at trial [and] that defense counsel acted not only competently, but impressively," and that the trial court had a "reasonable factual basis upon which to make its decision." *McCarter*, 385 Ill. App. 3d at 942.

¶ 41    On the second claim in *McCarter*, the trial court asked defendant if it was correct that he " 'wanted a bench trial, but, however, your attorney wanted a jury trial.' " *McCarter*, 385 Ill. App. 3d at 926. The defendant responded, " 'Yes, sir.' " *McCarter*, 385 Ill. App. 3d at 926. The trial court conducted no further inquiry into defendant's claim. *McCarter*, 385 Ill. App. 3d at 926. We remanded the case to the trial court on this second claim because the trial court "made no effort to ask defendant to provide further details or question trial counsel to ascertain whether this allegation was a credible one." *McCarter*, 385 Ill. App. 3d at 944. The trial court did not "indicate that it had any basis upon which to deny [defendant's] claim other than the court's statement that the error was harmless because its finding at a bench trial would be no different than the finding of the jury." *McCarter*, 385 Ill. App. 3d at 944.

¶ 42    In the case at bar, defendant's ineffective assistance of counsel claim was not based on his trial counsel's failure to call new witnesses or his denial of defendant's right to a bench trial. Instead, defendant claimed his trial counsel should have asked different questions of Officer Bond, a witness who testified. The trial court heard defendant testify about the search of his vehicle for drugs and Officer Bond testify about defendant's suspended driver's license, in contrast to *McCarter* where defendant sought to call witnesses who had not testified at trial. In *McCarter*, the trial court could not rule on defendant's ineffective assistance of counsel motion without questioning defendant or his counsel about whether these alibi witnesses would be sufficient to reverse the outcome of the trial. Unlike *McCarter*, the trial court here had a reasonable factual basis to determine whether defense counsel's cross-examination of Officer Bond on the matters claimed by defendant would have changed the outcome at trial.

¶ 43    The third case defendant cites is *Parsons*, which defendant claims requires trial courts to " 'examine' " factual matters underlying every claim to comply with *Krankel*. *Parsons*, 222 Ill. App. 3d at 830. In *Parsons*, the defendant claimed ineffective assistance of counsel

during the sentencing phase. *Parsons*, 222 Ill. App. 3d at 828. The defendant argued that his attorney identified "the wrong witness" as part of discovery, waited too long to "reveal[ ] the existence of [a] lease between defendant" and a police informant's girlfriend, and failed to interview or call the police informant as a witness. *Parsons*, 222 Ill. App. 3d at 827-28. The trial court failed to hold a hearing or conduct an inquiry based on defendant's statements. *Parsons*, 222 Ill. App. 3d at 828.

¶ 44    On appeal, we found that the trial "record does not make clear that the decision not to call" the police informant "as a witness was trial strategy–the facts imply the possibility that" the police informant "was never even interviewed by defendant's counsel." *Parsons*, 222 Ill. App. 3d at 830. In contrast, "[t]he failure to call the witness (whose mother was erroneously disclosed) and the failure to reveal the existence of a lease seem to be quite harmless, given the apparent irrelevance of the witness' testimony and the cumulative nature of the lease." *Parsons*, 222 Ill. App. 3d at 830. We only remanded the case to the trial court on defendant's ineffective assistance of counsel claim because the trial court failed to inquire into trial counsel's decision not to call the police informant, who had not testified at trial. *Parsons*, 222 Ill. App. 3d at 830.

¶ 45    As discussed in comparing the instant case with *McCarter* and *Vargas*, in the case at bar, defendant did not claim his attorney had failed to call a witness who he believes should have testified. His ineffective assistance claim related only to the cross-examination of Officer Bond on one irrelevant matter and on another matter that was clearly proven by the State. Unlike *Parsons*, the trial court could look to the trial court's record based on Officer Bond's testimony and the subjects defendant wished to cross-examine him on to determine the merit of defendant's claim. Furthermore, *Parsons* does not support defendant's argument that *Krankel* requires a colloquy with defendant or defendant's counsel for an "examin[ation]" of the factual matters underlying every ineffective assistance of counsel claim. In *Parsons*, we did not remand the case for an inquiry under *Krankel* into the trial counsel's incorrect listing of a witness or the delay in revealing the lease's existence. *Parsons*, 222 Ill. App. 3d at 830. In *Parsons*, the case was only remanded for an inquiry into defense counsel's decision not to interview or call the police informant as a witness. *Parsons*, 222 Ill. App. 3d at 830. The case at bar is factually distinguishable from *Parsons* because Officer Bond was called as a witness and his testimony is in the record.

¶ 46    Therefore, we find that the trial court's failure to conduct further inquiry into defendant's ineffective assistance of counsel claim under *Krankel* was harmless error and its ruling was not manifestly erroneous because those claims concerned a witness who testified at trial and defendant's claims were either not relevant to the charges against him or related to trial strategy. The trial court presided and heard all of the testimony at trial and we cannot say that the trial court had an inadequate basis in the trial record to determine defendant's claims. We cannot say that, had Officer Bond been cross-examined on these subjects, there was a reasonable probability that defendant's trial would have reached a different result. *Colon*, 225 Ill. 2d at 135; *Evans*, 209 Ill. 2d at 220.

¶ 47                     II. Defendant's Fitness for Trial

¶ 48      Defendant contends that a *bona fide* doubt arose regarding his fitness to stand trial, which
required the trial court, *sua sponte,* to conduct a fitness hearing pursuant to section 104-10
of the Code of Criminal Procedure of 1963 (725 ILCS 5/104-10 (West 2008)). Defendant
argues that several times during pretrial, trial, and posttrial proceedings, he made
"inappropriate, delusional, and non-responsive comments," demonstrated a
"misunderstanding of cross-examination," and refused "to answer relevant questions," all of
which raised a *bona fide* doubt that defendant did not understand the nature of the
proceedings and was unable to engage in a rational defense. Defendant argues that because
the trial court did not hold a fitness hearing, his conviction must be reversed and the case
should be remanded for a fitness hearing and new trial.

¶ 49          A. Appellate Court Review of Trial Court's Fitness Determination

¶ 50      As an initial matter, the State argues that defendant has forfeited his fitness arguments
on appeal because he did not raise them prior to trial or in his motion for a new trial. *People
v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, the right to be fit for trial is "fundamental"
and "prosecuting a defendant whether there is a *bona fide* doubt as to that defendant's fitness
renders the proceeding fundamentally unfair." *People v. Sandham*, 174 Ill. 2d 379, 382
(1996) (rejecting the State's argument that defendant forfeited his right to raise fitness
arguments on appeal); *People v. Wilson*, 124 Ill. App. 3d 831 (1984) (defendant did not
forfeit his fitness for trial although he made no formal motion for a fitness hearing before or
during trial or in his posttrial motion). Defendant's fitness "for trial, to plead, or to be
sentenced may be raised by *** the [c]ourt at any appropriate time before a plea is entered
or before, during, or after trial." 725 ILCS 5/104-11(a) (West 2008).

¶ 51      Furthermore, a trial court's failure to order a fitness hearing *sua sponte* "may be reviewed
as plain error" because "it concerns a substantial right." *People v. Contorno*, 322 Ill. App.
3d 177, 180 (2001) (citing *People v. Basler*, 193 Ill. 2d 545, 549 (2000)). When a defendant
has failed to preserve an error for review, we may still review for plain error. *People v.
Piatkowski,* 225 Ill. 2d 551, 562-63 (2007); Ill. S. Ct. R. 615(a) ("Plain errors or defects
affecting substantial rights may be noticed although they were not brought to the attention
of the trial court."). "[T]he plain-error doctrine allows a reviewing court to consider
unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely
balanced that the error alone threatened to tip the scales of justice against the defendant,
regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that
error is so serious that it affected the fairness of the defendant's trial and challenged the
integrity of the judicial process, regardless of the closeness of the evidence." *Piatkowski,* 225
Ill. 2d at 565; *People v. Woods,* 214 Ill. 2d 455, 471 (2005). Defendant claims that the trial
court's failure to order a fitness hearing "deprived Tolefree of his rights to due process of
law," and defendant argues we should find plain error under the second prong. However,
before we reach the issue of plain error, we must first determine whether any error occurred
at all. *People v. Walker,* 392 Ill. App. 3d 277, 294 (2009) ("[i]n a plain error analysis, 'the
first step' for a reviewing court is to determine whether any error at all occurred"). Defendant

carries the burden of persuasion under both prongs of the plain error rule. *People v. Lewis,* 234 Ill. 2d 32, 43 (2009).

¶ 52    The State also argues that the trial court's "fail[ure] to order a hearing into the issue of defendant's fitness" should be reviewed for abuse of discretion. Defendant argues the proper standard of review is *de novo* because the trial court never affirmatively exercised its discretion to make a determination of defendant's fitness.

¶ 53    Fitness for trial is an issue of "constitutional dimension," which means "the record must show an affirmative exercise of judicial discretion regarding the determination of fitness" to be reviewed for abuse of discretion. *Contorno*, 322 Ill. App. 3d at 179; *People v. Baldwin*, 185 Ill. App. 3d 1079, 1088 (1989); *People v. Turner*, 111 Ill. App. 3d 358, 365 (1982); *People v. Greene*, 102 Ill. App. 3d 639, 642 (1981). "A trial court abuses its discretion only where its ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *In re Adoption of S.G.*, 401 Ill. App. 3d 775, 784 (2010). Whether a *bona fide* doubt arose rests largely within the discretion of the trial court which, unlike this court, was in a position to observe a defendant and evaluate his conduct. *People v. Murphy*, 72 Ill. 2d 421, 426 (1978); *People v. Sandham*, 174 Ill. 2d at 382 (trial court's failure to order a fitness hearing *sua sponte* "is generally a matter within the discretion of the trial court"); *People v. Tilson*, 108 Ill. App. 3d 973, 978 (1982) (trial court did not abuse its discretion in failing to hold a fitness hearing *sua sponte* where it did not know defendant was taking medication and defendant's demeanor at trial indicated that he understood the charges against him and was able to assist in his defense). Therefore, we review the trial court's failure to order a fitness hearing *sua sponte* for abuse of discretion.

¶ 54                    B. No *Bona Fide* Doubt as to Defendant's Fitness

¶ 55    A defendant is presumed to be fit to stand trial and be sentenced. 725 ILCS 5/104-10 (West 2008). Due process bars the prosecution or sentencing of an unfit defendant. *Sandham*, 174 Ill. 2d at 382; *People v. Johnson*, 206 Ill. 2d 348, 361 (2002). A defendant is unfit if "he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense" because of his mental or physical condition. 725 ILCS 5/104-10 (West 2008). Even if a defendant is competent at the beginning of trial, a trial court "must always be alert to circumstances suggesting a change that would render" defendant "unable to meet the standards of competence to stand trial." *Drope v. Missouri*, 420 U.S. 162, 181 (1975).

¶ 56    Once facts are brought to a trial court's attention that raise a *bona fide* doubt as to defendant's fitness to stand trial or be sentenced, the court has duty to order a fitness hearing *sua sponte*. 725 ILCS 5/104-11(a) (West 2008); *People v. McCallister*, 193 Ill. 2d 63, 110-11 (2000); *People v. Johnson*, 183 Ill. 2d 176, 193 (1998); *People v. Murphy*, 72 Ill. 2d 421, 430 (1978). There is a *bona fide* doubt as to defendant's fitness if there is a "real, substantial and legitimate doubt" assessed against an objective standard. *People v. Eddmonds*, 143 Ill. 2d 501, 518 (1991). "Fitness speaks only to a person's ability to function within the context of trial; it does not refer to sanity or competence in other areas." *People v. Coleman*, 168 Ill. 2d 509, 524 (1995); *People v. Taylor*, 409 Ill. App. 3d 881, 896 (2011). A person may be fit for

trial although his mind is otherwise unsound. *Coleman*, 168 Ill. 2d at 524; *Taylor*, 409 Ill. App. 3d at 896. There are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated." *Drope*, 420 U.S. at 180. A trial court may consider defendant's irrational behavior, demeanor at trial, and any medical opinion on the defendant's competence to stand trial. *People v. Harris*, 206 Ill. 2d 293, 304 (2002); *People v. Burt*, 205 Ill. 2d 28, 39 (2001); *People v. Easley*, 192 Ill. 2d 307, 319 (2000); *People v. Eddmonds*, 143 Ill. 2d 501, 518 (1991).

¶ 57    In the case at bar, we cannot say the trial court abused its discretion by failing to hold a hearing *sua sponte* into defendant's fitness for trial. Defendant has not shown any evidence to support a finding that an inquiry was needed. Defendant's counsel made no representation at trial that his client did not understand the proceedings against him or that defendant could not assist in his defense. Defendant argues that his attorney informed the trial court during a pretrial hearing that communication with defendant had been "somewhat difficult." We are not persuaded that this general statement was enough to alert the trial court that defendant was unable to assist in his defense or did not understand the proceedings against him. Furthermore, defendant has not provided any medical evidence that would show a further inquiry was warranted.

¶ 58    Defendant cites *People v. Davenport*, 92 Ill. App. 3d 244 (1980), to argue that "defendant's delusional demeanor and lack of sufficient connection to reality" indicated the trial court needed to conduct a fitness hearing. In *Davenport*, the defendant received a pretrial fitness hearing in which he was found fit to stand trial. *Davenport*, 92 Ill. App. 3d at 244-45. The defendant was reexamined for fitness less than a year later and was again found fit to stand trial. *Davenport*, 92 Ill. App. 3d at 245. The defendant then committed himself to a hospital for 48 days for an unspecified reason. *Davenport*, 92 Ill. App. 3d at 245. At his trial nine months later, the defendant's attorney requested a fitness hearing for the defendant arguing that he was unable to communicate with his client because of the defendant's " 'incessant one-sided ramblings.' " *Davenport*, 92 Ill. App. 3d at 245. The defendant's motion for a new fitness hearing was then denied. The defendant was found guilty of rape and sentenced to 8 to 16 years' imprisonment. During the sentencing hearing, the defendant's attorney made additional motions to have the defendant psychiatrically evaluated, which were denied. *Davenport*, 92 Ill. App. 3d at 245.

¶ 59    On appeal, we found that the trial court erred in refusing to grant the defendant's motion for a fitness hearing. *Davenport*, 92 Ill. App. 3d at 247. Although the defendant was found fit to stand trial twice before the trial, he had been institutionalized in between the last fitness hearing and the trial. *Davenport*, 92 Ill. App. 3d at 246. The defendant had also been diagnosed with a mental disease, specifically as a "schizophrenic and a paranoid." *Davenport*, 92 Ill. App. 3d at 246. Defense counsel had "alerted the trial court judge to the fact that the defendant was unable to communicate with him and often engaged in one-sided ramblings." *Davenport*, 92 Ill. App. 3d at 246-47. Furthermore, we found the defendant's demeanor "indicate[d] that he was not in touch with reality." *Davenport*, 92 Ill. App. 3d at 247. The defendant, referring to his trial, claimed that "the whole procedure was illegal" because the "complainant had dropped all charges." *Davenport*, 92 Ill. App. 3d at 247. The

defendant acted as his own co-counsel and called a prosecution witness "sick" during his cross-examination. *Davenport*, 92 Ill. App. 3d at 245, 247. The defendant also called three witnesses who could identify him but did not know where he was on the night of the rape he was charged with. *Davenport*, 92 Ill. App. 3d at 245, 247.

¶ 60    We find *Davenport* distinguishable from the case at bar. Defendant has not presented any evidence that he was institutionalized or diagnosed with any mental health disorder. Defendant's counsel did not alert the trial court that he was unable to communicate with defendant. Defendant did not contest the legitimacy of the trial court to hear his case, did not attempt to cross-examine Officer Bond himself or insult the officer, and did not call irrelevant witnesses. Instead defendant allowed his attorney to cross-examine Officer Bond and later expressed his disappointment over questions not asked by his attorney. Defendant's focus on his vehicle's headlights and Officer Bond's search of his vehicle for drugs does not in itself support the claim that he was irrational. Throughout defendant's testimony, he consistently maintained he was not driving the vehicle at the time of his arrest. On cross-examination, defendant stated that he "pleads the fifth" and refused to answer some of the State's questions about whether he was driving his vehicle or why it had been parked in the Gladys Street alley. This refusal was consistent with his defense that he was not driving his vehicle at the time of the arrest. We are not persuaded that defendant's attention to legally irrelevant details in the context of his active participation in his defense suggests that he did not understand the nature of the proceedings.

¶ 61    Defendant argues his statements suggest he suffered from delusions and a "delusional conspiracy theory" that raised a *bona fide* doubt about his fitness. When the trial court asked defendant if he had an attorney, he responded, "I told the judge my car was on autopilot." Defendant testified that his vehicle was "stolen" by the city of Chicago "by racketeering."

¶ 62    Defendant compares his statements to the conspiracy theories held by the defendant in *People v. Jones*, 386 Ill. App. 3d 665 (2008). In *Jones*, the defendant sent the trial court 18 handwritten notes describing how the trial judge, all of the attorneys, and the police were involved in a conspiracy against him and he believed the trial court was practicing " 'illegal justice.' " *Jones*, 386 Ill. App. 3d at 666. The trial court held a jury trial on the issue of whether defendant was fit to stand trial and the jury found the defendant was fit to stand trial. *Jones*, 386 Ill. App. 3d at 668. We reversed the jury's finding of fitness in light of later testimony of a psychiatric expert that "defendant suffered from a grandiose and persecutory type of delusional disorder that rendered him unable to understand the charges against him and unable to assist in his defense." *Jones*, 386 Ill. App. 3d at 671-72.

¶ 63    We find the comparison of *Jones* with the case at bar unpersuasive. Here, defendant's few statements about his vehicle and "racketeering" did not suggest that he believed in a conspiracy that made him unable to communicate with his counsel or the trial court. In contrast, the *Jones* defendant's delusional statements were persistent and numerous and cast doubt on his ability to communicate with his attorney and the trial court. Unlike in *Jones*, defendant has not provided medical evidence showing that he now or at trial was diagnosed with a mental condition, that he was not able to function within the context of the trial, or that any of his statements at trial suggest he did not understand the nature of his proceedings. His attorney stated that communication with his client was "somewhat difficult," not

impossible. Therefore, we cannot say that the trial court committed any error and defendant's claim is forfeited.

¶ 64                                CONCLUSION

¶ 65        We find harmless any alleged failure by the trial court to conduct further inquiry into defendant's claim of ineffective assistance of counsel under *Krankel*, and we find that its *Krankel* ruling was not manifestly erroneous.

¶ 66        As to defendant's claim that the trial court failed to conduct a hearing *sua sponte* into defendant's fitness for trial, we found no error, and therefore there cannot be any plain error. *People v. Hanson*, 238 Ill. 2d 74, 115 (2010) ("Finding no error, our plain-error analysis ends here.").

¶ 67        Affirmed.