2020 IL App (1st) 172642-U

No. 1-17-2642

Order filed March 6, 2020

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| | ) | |
| v. | ) | No. 16 CR 06581 |
| | ) | |
| | ) | Honorable |
| LAVONTE LANE, | ) | Michael Joseph Kane, |
| | ) | Neil J. Linehan, |
| Defendant-Appellant. | ) | Judges, presiding. |

PRESIDING JUSTICE HOFFMAN delivered the judgment of the court.
Justices Rochford and Delort concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The trial court did not err by not conducting a hearing into defendant's fitness to
stand trial where no *bona fide* doubt of defendant's fitness existed.

¶ 2     Following a bench trial, defendant Lavonte Lane was convicted of aggravated battery to

an emergency medical technician and sentenced to 30 months' imprisonment. On appeal,

defendant argues he was denied due process because the trial court expressed a *bona fide* doubt as

to his fitness but did not conduct a fitness hearing before proceeding to trial. For the following reasons, we affirm.

¶ 3    Defendant was charged by information with two counts of aggravated battery to an emergency medical technician (720 ILCS 5/12-3.05(d)(5)(i) (West Supp. 2015)).

¶ 4    At a pretrial hearing on July 26, 2016, [1] defense counsel requested defendant undergo a behavioral clinical examination (BCX). On August 23, 2016, counsel informed the court that he received the BCX report in which Dr. Brian Curran concluded that defendant was fit to stand trial. In a letter to the court dated August 15, 2016, Dr. Curran stated that, based on an examination conducted on August 5, 2016, defendant was not "manifesting symptoms of a mental condition that would preclude his fitness," and was both "aware of the charge pending against him" and "familiar with the roles of various courtroom personnel." Defendant demonstrated a "sufficient understanding of the nature and purpose of legal proceedings" and was "capable of rationally assisting" his counsel. Further, defendant's medical records indicated that he was not prescribed psychotropic medication.

¶ 5    At a status hearing on March 21, 2017, defendant stated that he was "supposed" to be going to trial "right now." The court informed defendant that the case had been continued so that the parties could receive defendant's medical records. Defendant said that there was no evidence and that he had "priorities" and "people to take care of." He then stated, "you know, we eat lunch stuff from a garbage truck. We end up starving. We eating sandwiches and peanut butter and jelly sandwiches. We aren't eating no hot meals."

---

[1] Different judges presided at defendant's pretrial proceedings and at trial.

¶ 6    Defense counsel said that he could set a trial date. Defendant interjected, "Y'all said that last month. I got a birth date. I got people to see. I got business to take care of. I've been a man before anything." The following colloquy occurred:

"THE COURT: Does your client need to be BCX'd?

[DEFENSE COUNSEL]: He was, Judge. He was BCX'd.

THE COURT: Is there a problem now? It appears that he—

[DEFENSE COUNSEL]: Judge, as far as I know, other than frustration, he seems to be okay, Judge. *** Whatever additional discovery, [defendant] does not want to wait for. He wants to have his day in court so he wants to set it for trial.

[DEFENDANT]: I need the soonest date. I can't wait a month. I cannot wait a month, Judge.

THE COURT: You are not going to get it that quick.

[DEFENDANT]: I need at least a two week continuance or something—

THE COURT: Hang on. Hang on.

[DEFENDANT]: —or a week continuance.

THE COURT: Calm down. Calm down. I understand your frustration.

[DEFENDANT]: I'm a man, before I am anything."

¶ 7    The court told defendant that it understood his desire for trial, but that the parties needed to wait for discovery. Defendant stated that defense counsel was not making sense. When defense counsel offered to set trial for April 13, 2017, defendant said, "That's too long. *** I got stuff to do. I'm a man before I am anything. I'm 21 years old with a high school diploma." Defendant added that he could not "afford to be sitting in the county in no people face," and that, "Them COs

in the county is racist. I've been picked up another case from my frustration, because they don't have no common sense of me being a man, you see." The State informed defendant the soonest date for trial would be April 13, 2017. Defendant stated that he and his lawyers had been "naive," and continued to request an earlier date because he has children and "a birthday to attend to." The court responded that it had other cases on its docket, and the following colloquy occurred:

"[DEFENDANT]: I don't want to go back up in there with those people and talk and talk. Actually I feel like I need to do trial right now today, because y'all said y'all told me y'all let me do trial today, and now y'all—

THE COURT: We never said that.

[DEFENDANT]: Y'all told me that the last time, last month.

THE COURT: No, we didn't. The last month it said right here, we need additional discovery, including medical records. I wrote it right down there last month.

[DEFENDANT]: Y'all then had the medical records.

THE COURT: You told me that—you are saying that I told you last month it was for trial. If I'd set it for trial, I would have wrote it down. Here's what I wrote down last month.

[DEFENDANT]: You trying to talk.

THE COURT: What?

[DEFENDANT]: You trying to talk. I'm trying to get this case handled.

THE COURT: I'm trying to get this case handled. ***

[DEFENDANT]: You are trying to continue my case like I want to see you. I don't want to see you. I don't want to see these racist COs. All of these want to be pretty faces. I don't want to see none of that, and they are all up there watching Roots.

\*\*\*

Slave movies. I don't want to see no slavery and no old Egypt days. I don't want to see that. They keep wanting to solve my color. My—my race f\*\*\* up. I'm trying to go. I need to go home. I need to bench out for two weeks. For real. I'm trying to go home. Y'all want to talk."

¶ 8    The court then set trial for April 13, 2017. Defendant requested a piece of paper to record the date and said, "I'm a man before I am anything." The court told him to calm down, and that his lawyers were "only trying to do their job." Defendant replied, "I'm trying to do my job as a man," and "communication is the key." The court ordered another BCX, telling defendant, "I strongly believe you need to talk to a psychiatrist." The following colloquy occurred:

"[DEFENDANT]: I'll do all of that. Everything that you got to do. I ain't going to play with these people, playing with my race. \*\*\*

\*\*\*

Cuz y'all I'm dry. I'm just saying I need some p\*\*\* or something.

\*\*\*

THE COURT: Now there's definitely an issue here.

[DEFENDANT]: For real. I'm just saying. My d\*\*\* hanging.

\*\*\*

We all know what that is. Man, we all know what that is. I'm dry right now. Mother-f*** need some up, some square, something to drink or something, some liquor or something. You feel me.

\* \* \*

Damn man. I'm dry, man. Y'all get no p*** nowhere."

¶ 9     In a letter to the court dated April 13, 2017, Dr. Curran stated that he examined defendant on April 10, 2017, and again concluded that defendant was fit to stand trial because he was not "manifesting symptoms of a mental condition that would preclude his fitness." Dr. Curran noted that defendant "presented as oppositional towards the evaluation process" and provided limited and inconsistent responses to questions. However, defendant "demonstrated an ability to provide rational and logical responses." Defendant refused to sign releases to allow Forensic Clinical Services to obtain medical records from Cermak Health Services.

¶ 10     At a hearing on April 18, 2017, defense counsel informed the court that he received the results of the BCX and agreed to proceed to trial.

¶ 11     At trial on July 17, 2017, Patrick Garrity, a paramedic for the Chicago Fire Department, testified that on January 27, 2016, around 6:15 p.m., he and his partner were called to meet police officers and transport a patient to South Shore Hospital. When the paramedics arrived, the officers said they had "a male with an unknown complaint" who "needed medical evaluation." In court, Garrity identified that man as defendant. Defendant agreed to go to the hospital by ambulance. Defendant did not want to lay on a stretcher, so he sat on the ambulance's bench seat. During the ride, Garrity and his partner attempted to assess defendant, but defendant "was not really very cooperative."

¶ 12    At the hospital, defendant sat in the wheelchair offered by the paramedics and Garrity brought him into the emergency room. The attending physician began questioning defendant. Suddenly, defendant became "very upset" and refused to answer. Defendant attempted to kick the physician and surrounding chairs while "swearing and yelling." Garrity pulled defendant's wheelchair back to distance defendant from the physician and walked in front of defendant to calm him down. Defendant became more upset, stood up, and pushed Garrity "with two hands in the chest." Defendant then hit Garrity in the jaw and put his hand around Garrity's neck. Garrity grabbed defendant's arms and the two held each other until hospital employees separated them. On cross-examination, Garrity testified that when he assessed defendant in the ambulance, defendant would stop answering questions and sing.

¶ 13    The trial court found defendant guilty of two counts of aggravated battery. Defendant filed a motion for a new trial, arguing that the State failed to prove him guilty beyond a reasonable doubt, which the court denied. After a hearing, the court sentenced defendant to 30 months' imprisonment.

¶ 14    On appeal, defendant argues he was denied due process because the trial court expressed a *bona fide* doubt as to his fitness and *sua sponte* ordered him to undergo a BCX, but did not conduct a fitness hearing prior to trial.

¶ 15    Initially, defendant concedes that he has forfeited review of this issue by failing to object at trial or in a posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) ("*Both* a trial objection *and* a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial" (emphases in original)). Nevertheless, defendant asserts that we can review the issue as a matter of plain error. The plain-error doctrine provides a limited exception to

the general forfeiture rule by permitting review of unpreserved errors where (1) the evidence is closely balanced and the error threatened to tip the scales of justice against the defendant, or (2) the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. *People v. Garcia*, 2012 IL App (1st) 103590, ¶ 121 (citing *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)). The first step in plain-error analysis is to determine whether error occurred. *Id.*

¶ 16    Due process bars prosecuting a defendant who is unfit to stand trial. *People v. Sandham*, 174 Ill. 2d 379, 382 (1996). A defendant is presumed fit to stand trial and is only considered unfit where his mental or physical condition renders him unable to understand the nature and purpose of the proceedings against him or assist in his defense. 725 ILCS 5/104-10 (West 2016); *People v. Haynes*, 174 Ill. 2d 204, 226 (1996). A fitness determination depends on whether the defendant has a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." (Internal quotation marks omitted.) *People v. Stahl*, 2014 IL 115804, ¶ 24. "Fitness speaks only to a person's ability to function within the context of a trial. It does not refer to sanity or competence in other areas. A defendant can be fit for trial although his or her mind may be otherwise unsound." *People v. Easley*, 192 Ill. 2d 307, 320 (2000). "[T]here are no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated." (Internal quotation marks omitted.) *People v. Hanson*, 212 Ill. 2d 212, 222 (2004).

¶ 17    The issue of a defendant's fitness may be raised by the court or the parties before, during, or after trial. 725 ILCS 5/104-11(a) (West 2016). Where a *bona fide* doubt exists as to the

defendant's fitness, the trial court must order a fitness hearing. *People v. Qurash*, 2017 IL App (1st) 143412, ¶ 43. A fitness hearing is not required, however, if the court does not find a *bona fide* doubt as to the defendant's fitness. *Hanson*, 212 Ill. 2d at 217-18. At the defendant's request, the court may order an examination to determine whether a *bona fide* doubt of the defendant's fitness exists. 725 ILCS 5/104-11(b) (West 2016). Additionally, the court may order the examination *sua sponte*. 725 ILCS 5/104-11(a) (West 2016); *Hanson*, 212 Ill. 2d at 217.

¶ 18   The factors which may create a *bona fide* doubt of a defendant's fitness include the rationality of his behavior and demeanor at trial, prior medical opinions regarding his competence, and any representations by defense counsel regarding his competence. *People v. Brown*, 236 Ill. 2d 175, 186-87 (2010). The mere act of ordering a BCX does not, by itself, establish the trial court found a *bona fide* doubt as to the defendant's fitness. *Qurash*, 2017 IL App (1st) 143412, ¶ 43 (citing *Hanson*, 212 Ill. 2d at 222). Ultimately, whether a *bona fide* doubt exists is within the trial court's discretion, and therefore, we review its failure to order a fitness hearing *sua sponte* for abuse of discretion. *People v. Tolefree*, 2011 IL App (1st) 100689, ¶ 53.

¶ 19   In this case, we cannot say that the trial court abused its discretion by not holding a fitness hearing because the record reveals no *bona fide* doubt of defendant's fitness to stand trial. While the court ordered two BCXs prior to trial, once at the request of defense counsel and once *sua sponte*, on both occasions Dr. Curran pronounced defendant fit. Specifically, Dr. Curran opined in his first letter that defendant was not "manifesting symptoms of a mental condition that would preclude his fitness," was "aware of the charge pending against him," was "familiar with the roles of various courtroom personnel," demonstrated a "sufficient understanding of the nature and purpose of legal proceedings," and was "capable of rationally assisting" his counsel. After the

second BCX, Dr. Curran again concluded that defendant was fit because he "demonstrated an ability to provide rational and logical responses." Although defendant repeatedly expressed his dissatisfaction at waiting for a trial date, he did not make any exclamations that evidenced a lack of ability to understand the nature and purpose of the proceedings against him or to assist in his defense. See 725 ILCS 5/104-10 (West 2016). Further, defense counsel failed to represent any concerns regarding defendant's fitness. Instead, defense counsel indicated that defendant was "okay" and his complaints at the March 21, 2017 hearing were due to his "frustration" over having to wait for his trial.

¶ 20    To the extent defendant argues the court's comments that defendant "need[s] to talk to a psychiatrist" and "there's definitely an issue here" suggest the court had a *bona fide* doubt of defendant's fitness at the March 21, 2017 hearing, we disagree. The court had authority to order a BCX to determine whether a *bona fide* doubt existed, and the act of ordering the BCX does not show that the court had such doubt (see *Qurash*, 2017 IL App (1st) 143412, ¶ 43 (citing *Hanson*, 212 Ill. 2d at 222)). Thus, the court's comments in *sua sponte* ordering the BCX do not establish a *bona fide* doubt as to defendant's fitness, particularly where the results of the examination showed defendant could "provide rational and logical responses" to questions, which according to Dr. Curran demonstrated defendant was fit for trial. Based on the foregoing record, we cannot say that there was a *bona fide* doubt as to defendant's fitness, and therefore, the trial court did not err by not conducting a fitness hearing prior to defendant's trial. Plain-error review is, therefore, unmerited. Accordingly, we affirm the judgment of the circuit court.

¶ 21    Affirmed.